CASE 45.—PERSONAL INJURY ACTION BY GEORGIA A.
CHAPMAN AGAINST THE CENTRAL KENTUCKY
TRACTION COMPANY.—November 12.

# Central Kentucky Traction Co. v. Chapman

Appeal from Woodford Circuit Court.

ROBERT L. STOUT, Circuit Judge.

Judgment for plaintiff. Defendant appeals.—Reversed.

1.  Carriers—Injury to Passenger Alighting from Street Car—
    Duty of Employes.—If the place where a street car stopped,
    the crossing of a steam railroad, was a regular stopping place
    for passengers, or where passengers, with the knowledge of
    the carrier, were in the habit of entering or leaving its cars,
    it was the duty of the employes in charge, before starting, to
    ascertain whether passengers desiring to leave the car had
    done so; but, if it was not such a place, and the stop was
    merely to look out for any steam train, then those in charge
    of the street car had no reason to suppose that a passenger
    would attempt to leave at that point, and unless they knew
    a passenger was so attempting to do, they were not negligent
    in starting without seeing whether she had alighted, and this,
    though she had, when getting on, notified the conductor that
    she wished to get off at the street next before the railroad
    crossing, and the car had not stopped there.
2.  Carriers—Starting up Street Car—Looking for Passengers
    Alighting—Instructions.—The addition to a proper instruction
    as to the duty of persons in charge of a street car relative
    to seeing, before starting up the car, whether a passenger was
    alighting, where the stop was merely to see whether a steam
    train was coming, and not at a place for passengers to get
    on or off; that if those in charge could with ordinary care
    have known of the passenger's purpose to alight, they were
    bound to look out for her safety, as well as if they knew of
    her purpose—is error, in placing substantially the same duty

Central Kentucky Traction Co. v. Chapman.

on the carrier at such a place as at one where passengers had the right to alight.

3. Damages—Personal Injury—Loss of Time—Pleading.—Loss of time from personal injury is a special damage, which must be specially pleaded, that it may be recovered.

4. Damages—Personal Injury—Permanent Impairment of Earning Capacity—Pleading.—While permanent impairment of earning capacity from personal injury is an element of general damages, it ought to be pleaded, if recovery for it is sought.

5. Damages—Special Damages—Pleadings.—The allegation of the petition that plaintiff was confined to her room for some time by reason of her injury, if not clearly referable to the nature and extent of the injury, rather than as asserting a claim to special damages from the injury, at least contains an ambiguity, which should be resolved against the pleader.

WALLACE & HARRIS for appellant.

### POINTS AND AUTHORITIES.

1. When a passenger boards a common carrier for a specified destination, and the carrier receives seasonable notice of what that destination is, it becomes the duty of the carrier to transport the passenger to such destination, and there allow him a reasonable time in which to debark, and if, under such circumstances, the passenger is, without fault on his part, carried beyond his destination, he has a cause of action against the carrier. (C., N. O. & T. P. Ry. Co. v. Richardson, 14 Ky. Law Rep. 367; C. & O. Ry. Co. v. Reeves, 25 Ky. Law Rep. 2236.)

2. When a passenger in attempting to alight at a regular passenger stop, from a vehicle belonging to a carrier, exercises proper care for his safety, and is free from carelessness and negligence, and the carrier, without regard to the passenger's safety, but with negligence and carelessness, starts the vehicle in motion, and the passenger is injured thereby, the passenger has a cause of action against the carrier.

3. Evidence conducing to show the defendant liable to the plaintiff in another form of action than that sued on, but not supporting the issue then on trial, is incompetent and irrelevant and ought to be rejected by the court. (Rice's Heirs v. Lowen, 5 Ky. (2 Bibb) 149; Winlock v. Hardy, 14 Ky. (2 Litt.) 272; Bullitt, &c., v. Ralston, &c., 8 Ky (1 A. K. Mar.) 244; Lofland v. Ewing, 15 Ky. (5 Litt.) 42; Smithpeters v. Griffin's Admr., 49 Ky. (10 B. Mon.), 259.)

4. Loss of time is a damage, which, wihle it flows naturally from

a tort, does not necessarily result therefrom, and is a special damage, and must be specially pleaded, in order to be recovered. (L. & N. R. R. Co. v. Dickey, 31 Ky. Law Rep. 894, 104 S. W. 329; Baries v. Louisville Electric Light Co., 25 Ky. Law Rep. 2303, 80 S. W. 814; Stroh v. So. Cov. & Cin. St. Ry. Co., 25 Ky. Law Rep. 1868, 78 S. W. 1120; L. & N. R. R. Co. v. Mason, 24 Ky. Law Rep. 1623, 72 S. W. 27; Jesse v. Shuck, 11 Ky. Law Rep. 463, 12 S. W. 304; Pepper v. Twyman, 5 Ky. Law Rep. 426.)

5. Where the injury sued for is an ordinary strain of the knee and is not permanent, a verdict for twenty-five hundred dollars is exorbitant and excessive.

MORTON, WEBB & WILSON and STOLL & BUSH for appellant.

If the court will bear with us, we desire to submit some suggestions in addition to the admirable argument of our associates, Wallace & Harris.

The points we wish to submit are as follows:

1. The court failed to instruct the jury to find peremptorily for the appellant.

2. The court erred in not giving instructions asked for by appellant, which presented its theory of the case.

3. The court erred in instructing the jury both as to the law and as to the means of damages.

FIELD McLEOD for appellee.

H. A. SCHOBERTH, ROBERT B. FRANKLIN of counsel.

POINTS AND AUTHORITIES.

1. The testimony complained of by appellant was competent, but even if irrelevant, did not prejudice appellant's substantial rights. (L. & N. R. R. Co. v. Stokes, 12 Ky. Law Rep. 192; Civil Code, section 134.)

2. The instruction complained of, even if erroneous, under the proof could not have injured appellant's substantial rights, and is consequently not cause of reversal. (L. & N. R. R. Co. v. Dickey, 31 Ky. Law Rep. 894; L. & N. R. R. Co. v. Reynolds, 24 Ky. Law Rep. 1402; So. Cov. & Cin. St. Ry. Co. v. Core, 29 Ky. Law Rep. 837; Civil Code, section 134.)

3. The verdict was not excessive, and could well have been for a larger amount, without being so.

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR—
Reversing.

Mrs. Chapman was a passenger on one of appellant's electric interurban cars from Versailles to Lexington this State. The cars made stops at certain stations along the line to receive and discharge passengers, and it is said also stops at street corners along the route in the city of Lexington for that purpose, its terminus then being at "Center" on Main street. Appellant's conductor in charge of the car on which appellee was a passenger was notified when she got on that she wished to leave the car at High street in Lexington. The car failed to stop at High street crossing, but proceeded to the next street, which is Water street. The lines of the steam railroad, the Louisville & Nashville and Chesapeake & Ohio, run along the latter street, and at right angles with Broadway, along which appellant's cars run. The car on this occasion stopped at the edge of Water street, it is claimed by appellant, to enable the conductor to go ahead onto the L. & N. tracks to see whether there was a free and safe passage across for his car. When the car made this stop, appellee attempted to alight from it. The car was then started upon the signal of the conductor that the track was clear, when appellee was thrown heavily to the ground, and sustained an injury to her knee. She recovered a substantial verdict for damages in this action.

It is contended by appellant that the stop at Water street was solely a safety stop, and not for the purpose of allowing passengers to get off or on the car; that it was not a regular passenger stop, and that its servants in charge of the car did not know of appel-

lee's intention to leave the car at that point; that, therefore, they were not charged with the duty to look out for her safety in alighting until they knew in any event that she intended then to do so. On the other hand, it is argued that appellant was notified of appellee's desire to get off at High street; and, having carried her beyond her destination, it must have known that she would probably want to leave the car at the next stop. However, this is not an action for damages for carrying the passenger beyond her destination. It is solely for her personal injury negligently inflicted by appellant. Having been wrongfully carried beyond her destination, she was rightfully on the car, and therefore entitled to all the care and protection due a passenger. If Water street was a regular passenger stop, or if passengers were in the habit of entering or leaving appellant's cars at that point with its knowledge, then it must be held to have anticipated that appellee, or any other passenger, might elect to leave the car there on this occasion, and in that event must have used the utmost of care for their safety in alighting from the car. If, however, Water street was not a regular or accustomed passenger stop, appellant was not bound to anticipate that appellee would attempt to leave the car there, although she had been carried beyond her destination. As to whether Water street was a regular or accustomed passenger stop was disputed in the evidence. The primary questions for the jury then were, first, was Water street a regular stopping place for passengers, or where passengers, with knowledge of the company, were in the habit of entering or leaving the cars? If it was, then appellant's servants in charge of the car were charged with the duty of looking out for the safety of passengers attempting to alight there when the car stopped,

Central Kentucky Traction Co. v. Chapman.

and before starting should have ascertained whether passengers desiring to leave the car had done so. This phase of the question was fairly submitted to the jury in the first instruction given. The second question was, if Water street was not a regular or accustomed passenger stop, but was for purely precautionary purposes, then those in charge of the car had no reason to suppose that passengers would attempt to leave it at that point; and, unless they actually knew then that appellee was so attempting to do, they were not negligent in starting the car without ascertaining whether she had alighted.

In the second instruction, which was doubtless framed to present the second phase of the case, the idea just expressed was submitted, but with the addition that if those in charge of the car could, with ordinary care, have known of appellee's purpose, they were bound to a duty to look out for her safety as well as if they in fact knew of it. This we think was an erroneous conception of the carrier's duty. It placed it on substantially the same footing as to looking out for its passengers at places where they had not the right to leave its cars, and therefore were not expected to attempt to do so, as where they had such right. If a passenger is wrongfully carried beyond his destination, it does not impose a duty on the carrier to provide a safe place for him to alight the first time the car stops, but must carry him safely back to his station, or safely to its next regular stopping place, unless by agreement with the passenger a special stop for his convenience is made in lieu of either of the others.

The petition charged a certain injury, describing it as painful and disabling, so that appellee was confined to her room for several weeks. In the instruction

defining the measure of damages, it was allowed that appellee might be compensated, in addition to her suffering endured and reasonably anticipated, and her impairment to earn money, for her loss of time. Loss of time is classed by the courts and writers as special damages. Like physician's bills, medicine, and other special elements of even proximate results of actionable negligence, they must be specially pleaded in order that they may be recovered for. Permanent impairment of earning capacity is an element of such general damages. But even that ought to be pleaded if a recovery on its account is sought. Much more so is it deemed that items of special damage should be set out, so as to bring notice home to the defendant that compensation is sought on that score, that the defendant may bring its witnesses to rebut the claim if it so desired. The allegation of the petition that plaintiff was confined to her room for some time by reason of her injury we understood to be referable to the nature and extent of the injury, rather than as asserting a claim to peculiar or special damages resulting from such injury. At any rate its ambiguity should be resolved against the pleader, rather than in her favor, is the safe and established rule of construction. Nor was there evidence of the value of the time lost. The verdict is so considerable that we can not say the jury may not have included that item in their finding in this case, which, under the state of pleadings and proof, was prejudicial error.

Judgment reversed, and cause remanded for new trial, under proceedings consistent herewith.