## Louisville and Nashville Railroad Company v. Moore.

(Decided November 22, 1912.)

### Appeal from Gallatin Circuit Court.

1. Railroads—Pleading.—Appellee should have been required, as moved by appellant, to make his petition more specific by alleging the name of the station at which his injuries were received, and the amount expended by him in procuring surgical treatment and medicines, in effecting a cure.

2. Railroads—Declaration of Bystander—Rebuke of Porter by Conductor—Res Gestae.—The declaration of a bystander made to the conductor that appellee would not have been injured but for the failure of the train porter to have with him a lantern when appellee alighted from the train; as well as the rebuke for not having a lantern given the porter by the conductor at the same time were incompetent as substantive evidence. As both were made following the starting of the train from the station after appellee was injured and its backing to the station for the conductor to make inquiry as to the extent of his injuries, they were too remote in point of time from the happening of the accident, to constitute them a part of the res gestae.

3. Instructions—Pleading.—Instruction No. 1 was radically wrong, as it allowed the jury to find for appellee by way of special damages, compensation for the loss of time from the date of his injury down to the date of the trial; and for expense incurred in procuring surgical treatment in effecting a cure, without limit as to amount; whereas the petition alleged only two months' loss of time, and failed to fix any amount of expense incurred for effecting a cure. Moreover, the instruction erroneously allowed

a recovery for the permanent impairment of appellee's ability to earn money and, in addition, for diminution of his power "to pursue the course of life he might otherwise have done." As the petition failed to allege that appellee was permanently injured, or that his power to earn money had been permanently impaired (one of which should have been alleged), no recovery should have been allowed for the impairment of such power; and in advising the jury that they might compensate appellee for any diminution of his power "to pursue the course of life he might otherwise have done," the instruction erroneously introduced into the case, what the jury must have regarded, an independent element of damages, not included in that part of the instruction which authorized a recovery for the impairment of his ability to earn money.

4. Instructions.—The opinion indicates the proper instructions to be given on another trial in lieu of instruction No. 1, referred to.

BENJAMIN D. WARFIELD, R. B. BROWN and JNO. S. GAUNT for appellant.

E. E. WINN and BOTTS, PERRY & LINDSAY for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This is an appeal from a judgment entered upon a verdict awarding appellee $10,000 damages for personal injuries sustained by him, as alleged, through the negligence of appellant's servants in operating its passenger train, whereby he was violently thrown to the ground, his arm broken and shoulder injured. A motion was made by appellant in the court below to require appellee to make his petition more specific, and it also filed a general demurrer to the petition. The motion and demurrer were overruled, to which the appellant excepted. It thereupon filed an answer of two paragraphs, the first containing a traverse; the second pleading contributory negligence on the part of the appellee, and the latter paragraph was traversed by appellee's reply.

A reversal of the judgment is sought by appellant on the grounds (1) that the court erred in overruling its motion and demurrer; (2) in refusing it a peremptory instruction; (3) in the admission and rejection of evidence; (4) in instructing the jury; (5) that the damages are excessive.

As it cannot be said that the petition does not state a cause of action, at least to the extent of authorizing a recovery of damages for physical and mental sufferings, the demurrer was properly overruled. · The motion

to make the petition more specific should have been sustained.

While the averments of the petition as to the negligence on the part of appellant's servants in operating the train and causing appellee's injuries, are, we think, sufficiently definite and comprehensive, the petition fails to state at what station appellee was injured; and, although it alleges the injuries sustained to his person, the consequent suffering both physical and mental, and that he was put to great expense for surgical treatment and in paying railroad fare and hotel bills in procuring same, it fails to allege the amount or aggregate of the expenses thus incurred by him. It is also alleged in the petition that appellee was to an extent, not described, crippled by the injuries he sustained; it is not therein alleged that he was permanently injured thereby, or that his ability to follow his usual occupation and to earn money, is permanently impaired, or even diminished, by the injuries, the alleged negligence of appellant's servants, caused him.

Appellee should have been required to amend his petition by setting out specifically the station or place at which his injuries were received; the amount reasonably expended by him for surgical treatment and in procuring same, and whether or not such injuries caused a temporary or permanent impairment of his ability to earn money.

It is a well recognized rule of law that in an action, like the one at bar, if the plaintiff would recover for an injury, which was the natural and proximate, but not the necessary consequence of the defendant's wrongful act, it must be alleged in the petition or he cannot recover such special damages; and expenses incurred for surgical treatment are special damages.

In Central Kentucky Traction Company v. Chapman, 130 Ky., 342, we said, Judge O'Rear writing:

"The petition charged a certain injury, describing it as painful and disabling, so that appellee was confined to her room for several weeks. In the instruction defining the measure of damages it was allowed that appellee might be compensated, in addition to her suffering endured and reasonably anticipated, and her impairment to earn money for her loss of time. Loss of time is classed by the courts and writers as special damages. Like physician's bills, medicine and other special

elements of even proximate results of actionable negligence they must be specially pleaded in order that they may be recovered for. Permanent impairment of earning capacity is an element of such general damages. But even that ought to be pleaded if a recovery on its account is sought. Much more so is it deemed that items of special damages should be set out, so as to bring notice home to the defendant that compensation is sought on that score, that the defendant may bring its witnesses to rebut the claim if it so desired.'' Blue Grass Traction Co. v. Ingalls, 140 Ky., 488; L. & N. R. R. Co. v. Dickey, 31 R., 894; L. & N. R. R. Co. v. Reynolds, 24 R., 1402; Newman's Pleading & Practice, sections 345c and 441; 5 Cyc., 719; Lewis' Greenleaf on Evidence, section 254. In the more recent case of L. & N. R. R. Co. v. Grassman, 147 Ky., 618, we held, that in order to recover damages for a permanent impairment of the plaintiff's power to earn money, it was sufficient to allege in the petition that the plaintiff was permanently injured. Our examination of the evidence found in the record fails to convince us that the refusal of the trial court to grant the peremptory instruction asked by appellant was error. It appears from the evidence that appellee is a resident of and hotel keeper at Sparta, Ky., and that his injuries were sustained at the station of that town in attempting to alight, at midnight, from one of appellant's trains upon which he had ridden from Cincinnati as a passenger; the train being at the time moving slowly, which, it was claimed, caused him to fall upon the station platform of crushed stone, the fall resulting in the breaking of a bone of one of his arms and the tearing loose of some of the muscles or ligaments of the shoulder.

According to his testimony when the train whistle blew for Sparta, he was seated near the middle of the coach, known as the ladies' car. When the station was called, either by the conductor or a negro porter, he left his seat and went to the vestibule at the front end of the car, where he met and had some conversation with the conductor, who was standing in the vestibule on his left, with his lantern on the floor at his feet. As appellee was thus situated the negro porter, who was also in the vestibule, stepped down therefrom and said, ''All out for Sparta,'' and when he got down on the station platform, or as he was stepping from the bottom step

of the car, again called out, "All out for Sparta." Appellee thereupon stepped down from the steps of the vestibule and was, by the motion of the train, thrown to the platform. Appellee also testified that when he (appellee) stepped off the car he did not know whether it was in motion, but that the porter was on the ground, apparently, holding with his left hand to the railing of the car platform, and although it was very dark was without a lantern. The conductor, he thought, was still in the vestibule and at a distance of from ten to twelve feet from him at the time he attempted to alight.

McCormick and Coates, two other passengers on the train, testified that when Sparta station was announced they came out of the smoking car to the rear platform or vestibule thereof and saw appellee standing in the vestibule of the other car. They, too, heard the porter as he stepped, or was in the act of stepping, from the vestibule of the car to the station platform, say, "All out for Sparta," saw appellee step or fall from the car steps to the station platform before the train stopped, and themselves safely stepped from the car immediately afterwards, while it was still slowly moving.

These witnesses, and all others introduced on the trial for appellee, testified as to the darkness of the night, that the porter had no lantern, and that there were no lights on the station platform or at the place where appellee fell.

Harris, the negro porter, testified for appellant that when the train got to Sparta, he was in the front end of the car in which appellee was riding, engaged, by order of the conductor, in sweeping; that he did not call out the station, get off the car ahead of appellee or see him get off or fall, and was not on the depot platform at Sparta until after appellee was injured.

The flagman of the train, Buckholdt, testified that it was he who got off the train at Sparta ahead of appellee; that when he got off the train he had his lighted lantern with him and seeing that appellee was about to follow him before the train had come to a stop, he told him not to get off, but that appellee persisted in doing so and thereby fell. The witness further testified that he had hold of the railing of the car and tried to catch appellee as he fell, but, failing to do so, jumped over him, by which time the train had stopped. The witness waited until the other two passengers, Mc-

Cormack and Coates, got off, then went to appellee and asked him if he was hurt, to which he replied that he had broken his arm. Thereupon witness got upon the train, which had started, and informed the conductor that appellee had been injured, following which the conductor immediately stopped the train the second time, went back to where appellee was, took his name and made inquiry as to his injuries, and the manner of his receiving same. On cross examination the flagman admitted he called, "All out for Sparta," as the train was pulling into that station, but said that he made no such call as he stepped off the train or after he got on the station platform.

Thompson, the conductor, testified that as the train approached Sparta, Buckholdt, the flagman, signaled the engineer to stop, and walked through the car from the rear to the front, several times calling "Sparta" as he went along; that he saw Buckholdt open the vestibule door, and that he then had a lighted lantern in his hand, but did not further observe what he did. He did, however, observe the colored porter coming out of the smoking car and directed him to sweep out some cigarette papers that were on the floor of the ladies' coach. The last witness saw of appellee he had started down the steps behind the flagman, but he did not see either the flagman or appellee get off the train, nor did he see appellee again until he went back to where he was, after the second stopping of the train, to ascertain whether he was injured. The witness also testified that the porter was engaged in the work of sweeping when appellee got off the train.

William Davis, who was station pumper for appellant, testified that he was at the train when it reached Sparta for the purpose of informing Coates of the illness of his wife; that as the train came up and while it was still slowly moving, he saw appellee come out of the door of the coach and proceed down the steps and walk off, and, seeing him fall, went to him immediately; that he also saw some one jump over appellee on the platform after he fell. Witness did not know whether the porter had a lantern or whether the trainman he saw on the platform was white or colored.

All of the witnesses agreed in the statement that there were two stops of the train. McCormack and Coates testified that the first stop was made within twen-

ty-five or thirty feet of the place where appellee fell. Some of the defendant's witnesses thought it came to a stop nearer the place of the accident.

It is, however, manifest from the evidence as a whole, that the train had not stopped, but was slowly moving when appellee stepped from it.

It is apparent from what we have said of the evidence that so much of it as was furnished by appellee's witnesses shows the porter to have been the person who got off the train in advance of appellee, that in doing so he called, ''All out for Sparta,'' and that he was without a lantern. But, according to the testimony of the conductor and flagman, it was the latter who stepped from the train ahead of appellee; that he then had in his hand a lantern, and instead of calling, ''All out for Sparta,'' and thereby inviting appellee to get off the train, that he warned him not to do so until the train stopped.

In view of this conflicting evidence we do not think the trial court was authorized to hold, as a matter of law, that appellee's injuries were caused by his own negligence.

It was therefore properly left to the jury to determine from the evidence, as a whole, whether in stepping from the train under the circumstances attending the act, appellee was guilty of contributory negligence, but for which his injuries would not have been received. Ordinarily, a passenger who is injured by stepping from a train while it is moving at a rate of speed that makes it probably unsafe for him to do so, would be held guilty of such negligence as would prevent a recovery. Glasscock v. C., N. O. & T. P. Ry. Co., 140 Ky., 720; Hewlitt v. L. & N. R. R. Co., 15 R., 178; Adams, Admr. v. L. & N. R. R. Co., 82 Ky., 608. But if appellee, while a night passenger on appellant's train, was informed by one of the train employes that it had reached his destination, such information, being attended by the lessening of the speed of the train, as if for the purpose of stopping, and the train porter while the train was still in motion, in his presence, stepped from it ahead of him immediately after calling to him to get off, and appellee was induced thereby to step from the train in the belief that it had stopped and by reason thereof fell and was injured, he was not guilty of negligence, unless, notwithstanding the direction

from the porter to alight, he knew, or by the exercise of ordinary care might have discovered, that the train was still in motion and that it was, under the circumstances, dangerous for him to attempt to alight from it. Especially would this be true, if his inability to know whether the train was still in motion, was due to the darkness of the night and the failure of the porter to provide himself with a lantern.

If appellee's injuries were, as much of the evidence conduced to prove, received under the circumstances above stated, it may well be said that the negligence of appellant's porter was the efficient or proximate cause thereof.

The presence, at the time of the accident, of a light from a lantern in the hands of the porter, if he was the employe by whom appellee was directed to leave the train, might, and doubtless would, have enabled the latter to see that the train had not stopped when he stepped from it, and also to appreciate the danger, if any there was, in attempting to leave it while in motion. In Louisville & Nashville R. R. Co. v. Mount, 125 Ky., 593, the plaintiff was injured in alighting at night from a train at Lancaster. In commenting upon the care required of the railroad company under such circumstances, we, in the opinion, said:

"While the matter principally complained of in the petition was the unusual height of the car steps from the platform, after all, the question of whether it was unsafe or dangerous for appellee to get off the train, depended upon the conditions then existing. Stepping from the car at the same place in the day time doubtless would have been attended with no danger to appellee, notwithstanding the unsafe height of the car steps from the platform, but to do so at night, without a light to guide him or appliance to break the distance between the last car step and the platform, might have made the act of alighting dangerous. For these reasons we think it was competent, under the averments of the petition, for appellee to prove, as he was permitted to do, the absence of a light or of any appliance appellant's trainmen were accustomed to provide on that road for the use of passengers in alighting from its cars."

We find it necessary to sustain appellant's contention as to the incompetency of the declaration appellee's witnesses testified was made by the witness Davis, to

the conductor, at the time the latter reached appellee after he was injured. The declaration was in substance, that if the train porter had been in possession of his train lantern at the time of the accident, appellee would not have been injured. Proof of this statement attributed to Davis was apparently allowed as substantive evidence, as well as for the purpose of contradicting him and thereby impeaching his credibility; foundation for same having been laid by asking him on cross-examination if he had made the statement in question and obtaining his denial thereof. The statement was a mere expression of opinion on the part of a bystander, under no duty to speak for appellant or its servants in charge of the train. Besides, it was not a part of the res gestae, because too remote in point of time from the infliction of appellee's injuries, as it was not made until after the train left Sparta station, proceeded several hundred feet therefrom and had been backed to the place of the accident for the conductor to inquire of appellee as to his injuries.

It is likewise true that the rebuke, which appellee and his witnesses say was given the porter by the conductor, for not having his lantern at the time of the accident, was not a part of the res gestae, and should, therefore, have been excluded as substantive testimony. It was made, as was the statement of Davis referred to, after the accident and when the conductor returned to interview appellee. This being true, what the conductor said to the porter could not affect or bind appellant, their principal. 1st. Greenleaf on Evidence, section 113; I. C. R. R. Co. v. Winslow, 119 Ky., 877; C. & O. Ry. Co. v. Reeves, Admr., 11 R., 14; L. & N. R. R. Co. v. Ellis' Admr., 17 R., 259; L. & N. R. R. Co. v. Webb, 99 Ky., 332; Parker's Admr. v. Cum. Tel. Co., 25 R., 1391. As the foundation therefor seems to have been properly laid, the declarations of Davis and the conductor, referred to, might have been allowed to go to the jury for the sole purpose of contradicting them and thereby impeaching their credibility. But in such event the court should have told the jury it could be considered by them for this purpose and no other.

Appellant's complaint as to the instructions next requires consideration. Instruction No. 1 is radically wrong in the following particulars: (1) It erroneously authorized the jury, if they found for appellee, to allow

him damages for loss of time from the date of receiving his injuries down to the date of the trial, whereas the petition only alleged the loss of two months' time and the proof was very indefinite as to such loss of time, though it, in some sort, conduced to show the loss of two and one-half months of time, certainly not more. (2) It erroneously allowed the recovery of expenses for surgical attention and the cost of board and railroad fare in procuring same, incurred by appellee, without limit as to amount, in the absence of an allegation in the petition fixing the amount thereof; and likewise an absence of proof showing the maximum amount of such expense.

In Blue Grass Traction Company v. Ingels, 140 Ky., 488, we held that if it is desired in a case, like this, to recover, in addition to general damages, special damages; as for loss of time, and expenses incurred in effecting a cure, the petition must state, how much time was lost; also the amount sought to be recovered in expenses incurred for effecting the cure of the plaintiff or attempting such cure, if the amount be known to him; but if not known, such an amount as will approximately cover such expense incurred and to be incurred. In addition. the instruction as to the measure of damages should have limited the recovery for loss of time to the period alleged, and the recovery of expense of the cure to the amount alleged, in the petition.''

(3) The instruction further improperly allowed a recovery for the permanent impairment of the appellee's power to earn money, although the petition did not allege such impairment or that appellee was permanently injured, one of which, as held in Central Ky. Traction Co. v. Chapman, supra, and L. & N. R. R. Co. v. Grassman, supra, should be alleged. It also improperly allowed the jury to award appellee damages on account of any diminution of his power ''to pursue the course of life he might otherwise have done.'' If the petition had alleged an impairment of appellee's power to earn money, or that he was permanently injured, the instruction, as to this item of damages, should have confined the recovery to compensation for the loss, if any, of such power; therefore, in allowing a recovery for such a sum, in addition, as would compensate him for any diminution of his power, ''to pursue the course of life he might otherwise have done,'' the instruction erroneous-

ly introduced into the case, and gave emphasis to, what the jury must have regarded an independent element of damages not included in that part of the instruction which authorized a recovery for the impairment of appellee's ability to earn money.

A similar expression in an instruction as to the measure of damages, received our disapproval in the case of Louisville & Nashville R. R. Co. v. Logsden, 114 Ky., 746, evidently upon the ground we have indicated.

Instructions should be predicated upon the issues made by the pleadings and the facts appertaining to such issues furnished by competent evidence introduced on the trial; and in writing them brevity and clearness of expression should be used by the court, in order that their meaning may readily be understood by the jury.

Upon the return of the case to the circuit court appellee should be required, by a proper amendment, to make more specific, as indicated in the opinion, his claims of special damages, and when the case is again tried, that court should in lieu of instrction No. 1, give the following instructions:

The court instructs the jury that it was the duty of defendant's servants in charge of the train upon which plaintiff was a passenger, to exercise the highest degree of care, which prudent persons engaged in a like business usually exercise, to carry him safely as a passenger to Sparta, his destination, and to there allow him to alight from the train in safety; and the duty of plaintiff while upon the train and in leaving it, to exercise ordinary care for his own safety. If you believe from the evidence that the train arrived at Sparta in the darkness of the night; that its arrival was announced in the hearing of plaintiff by one of the train employes, and its speed lessened in approaching the station; and shall further believe from the evidence that the train porter, while it was still in motion, requested the plaintiff to get off and immediately stepped from the train himself, unprovided with a lantern; and that plaintiff was induced by such request and the act of the porter in stepping from the train, if either, to step from it himself, in the belief that it had stopped, and by reason thereof fell and was injured; you should find for the plaintiff, unless you believe from the evidence he knew, or by the exercise of ordinary care might have discovered, that the train was still in motion, and that it

was not under the circumstances, reasonably safe for him to attempt to alight from it; in which event you should find for the defendant. (2) If you find for plaintiff, you should award him such a sum in damages as you may believe from the evidence will fairly and reasonably compensate him for the physical and mental sufferings, if any of either, the time, if any, not exceeding two months, lost from his usual work or business, the cost to him of medicine and surgical bills, if any of either, incurred in effecting a cure, not to exceed $————, and for the permanent impairment, if any, of his power to earn money, that may have resulted to and been directly caused plaintiff by the negligence, if any, of defendant's agents and servants complained of. But the damages, if any are allowed, should not, altogether, exceed $20,000, the amount claimed in the petition. The blank left in the instruction on the measure of damages is, of course, to be filled with the amount appellee may claim in the amended petition as the expense of his cure; and so much of the same instruction as allows the recovery of damages for the permanent impairment of his power to earn money, is added, because of the assumption that the amended petition will allege such permanent impairment, from the injuries sustained.

We do not understand that the remaining instructions given on the trial are seriously objected to. At any rate we think them substantially correct. As the case must be retried, we have not thought it proper to pass on appellant's complaint as to the amount of the verdict.

For the reasons indicated, the judgment is reversed and cause remanded for a new trial consistent with the opinion.