# Lexington & Eastern Railway Company v. Crawford.

(Decided November 12,˙1913).

## Appeal from Lee Circuit Court.

1. Appeal—Review—Bill of Evidence—Necessity of—Misconduct of Counsel.—Alleged misconduct of counsel on the trial of a case, which is not excepted to when indulged in by him, but is later ob‧jected to in the motion for a new trial, cannot be considered on appeal.

2. Damages—Personal Injuries.—Where plaintiff's body was crushed, his spine and bladder injured so as to cause an issue of blood from the latter for a week or more, and his sexual organs so impaired as to destroy one of his testicles and to lessen his de‧sire for sexual intercourse, a verdict in his favor for $3,285 is not excessive.

3. Trial—Misconduct of Juror—Sufficiency of Evidence.—In an action for personal injuries, the charge that a juror had, before the trial, agreed with plaintiff, if he could get him on the jury, he would see to it that he would get a large verdict, in return for which plaintiff was to buy of the juror his farm at a stipulated price, is not sustained by the evidence.

4. Trial—Competency of Evidence.—The affidavit or testimony of a juror is incompetent for the purpose of impeaching the verdict of the jury of which he was a member.

5. Damages—Personal Injuries.—In an action for personal injuries, an instruction which authorizes a recovery by plaintiff of dam‧ages for mental suffering, also mental anguish, additional dam‧ages for permanent impairment of his health and strength, fur‧ther damages for the diminution of his power to earn money, and also damages, if his injuries were believed by the jury to be permanent, is so erroneous as to necessitate a reversal of the judgment appealed from.

6. Instructions.—Instruction should be predicated upon the issues made by the pleadings and the facts appertaining to such issues, furnished by competent evidence introduced on the trial.

7. Appeal—Review—Estoppel.—Where the trial court attempts to instruct the jury upon an issue involved, it is its duty to state the law correctly; and, if an instruction given does not correctly state the law, the error therein, if prejudicial to the substantial rights of the party complaining of it, and such instruction was objected to by him when given, will, on appeal, authorize a re‧versal, although the latter may not have offered or asked an in‧struction in lieu of such erroneous one, containing a correct state‧ment of the law.

8. Damages—Personal Injuries.—In an action for personal injuries, the measure of damages is such sum as will reasonably compen‧sate the plaintiff for his physical and mental sufferings, if any of either, the value of the time lost, if any, from his usual work or business, and for the permanent impairment, if any, of his

power to earn money, that may have directly resulted to and been caused him by the negligence of the defendant complained of.

SAM HURST, SAMUEL M. WILSON, E. S. JOUETT and GOUR-LEY & GOURLEY for appellant.

J. M. McDANIEL, H. V. McCHESNEY for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This is an appeal from a judgment entered upon a verdict awarding appellee $3,285.00, damages for injuries to his person, sustained from the alleged negligent operation by appellant's servants of an engine and cars, in moving them with unnecessary force upon a switch and against a car upon which appellee was engaged in loading cross-ties. The answer of appellant denied the negligence complained of and pleaded contributory negligence on the part of appellee.

The evidence conduced to prove that appellee was, at the time of receiving his injuries, in the employ of C. B. Waller, who was engaged in the business of getting out, shipping over appellant's railroad and selling, cross-ties. The ties were, in the main, floated down the middle fork of the Kentucky river to a village called Tallega, where they were hoisted with a derrick from the river to a platform standing by the side of appellant's railroad switch. It was the business of appellee to load the ties on the cars after they had been hoisted from the water to the platform in question, and, after getting them upon the cars, to stretch strong wires over the ties to keep them from falling from the cars during their transportation to market, the wires being fastened by staples driven into the sides of the cars. While appellee was wiring the rear end of the last of eight cars loaded with cross-ties and standing on appellant's switch, a freight train, consisting of an engine and four cars, was run by appellant's servants, the crew in charge thereof, upon the switch and into the cars standing there with such violence that it threw appellee from the car upon which he was at work between same and the timbers of the derrick, causing him to be rolled several feet between the car from which he fell and the timbers of the derrick, and finally casting his body to the ground.

As to the movements of the train and resulting collision of same with the cars on the sidetrack, there was

a contrariety of evidence: that of appellee conducing to prove that the train was backed on the switch at a dangerous rate of speed, and that the collision of the train with the standing cars on the switch was unusually vio‹lent and the jar to the standing cars was one of unusual force and suddenness; on the other hand, appellant's servants in charge of the train testified that it was moved at the usual, and a safe rate of speed, and that the collision between same and the standing cars on the sidetrack was without unnecessary force or violence, and such as usually resulted from the movements of such a train under such circumstances.

It further appears from the evidence of both appellant and appellee that, before entering the sidetrack or switch, the train in charge of appellant's servants was hid from the view of one in appellee's position by an abrupt curve in the main track and a projecting cliff; and, according to appellee's numerous witnesses, the train was moved around the curve upon the sidetrack and against the cars standing thereon without giving any signal of its approach, either by the ringing of its bell or the sounding of its whistle. Appellee himself testified that, immediately before and when the collision occurred, he and his fellow workman were engaged in driving staples and making other noises common to the work of hoisting, loading and wiring ties, and that he did not hear and was not informed of the coming of the train. He and his several witnesses also testified that it was the custom of appellant's servants, in moving its trains around the curve and on the sidetrack, to send in advance of the train and to the entrance to the sidetrack one of the brakemen to see that the sidetrack was clear of obstructions and to warn persons who might be thereon of the coming of the train, but that, on the occasion in question, this precaution was not observed. Appellant's servants in charge of the train did not deny the custom referred to, but did deny that they failed to observe it; testifying in that connection, that they sent Williams, a brakeman, in advance of the moving train to warn appellee and his fellow workmen of its coming, and that he did so warn them. They also testified that the movements of the train, in coming around the curve and entering the sidetrack, were attended by the constant and customary ringing of the bell, and that the engine whistle was sounded on the main track before the train reached the curve.

The jury evidently based their verdict upon the proof furnished by appellant's witnesses of the negligent operation of the train, but we need not comment upon the evidence further than to say, that there is no ground for disturbing the verdict of the jury on the evidence.

Four grounds were relied on by appellant for a new trial, and the same are now urged for a reversal of the judgment, viz.: First, misconduct during the trial of one of the attorneys for appellee; second, excessiveness of the verdict; third, misconduct of a juror; and fourth, error of the court in instructing the jury.

As to the first ground it is sufficient to say that the misconduct, on the part of the attorney, complained of should have been prevented by the trial court, but it gives no cause for a reversal of the judgment, because it was not excepted to by the appellant when indulged in by the attorney, but was brought to the attention of the court for the first time in the motion for a new trial. The rule that prevents us from considering this contention of appellant is thus stated in section 675, Newman's Pleading and Practice (New Edition): "Errors committed during a trial of a case if relied on in the court of Appeals as grounds for a reversal, must appear in the bill of exceptions, prepared in the usual form. It is not sufficient to present such errors (e. g. improper argument to the jury), for the first time in a motion for a new trial even though it be supported by affidavits." *  *  * Thompson v. Commonwealth, 112 Ky., 501; Stagg v. Brightwell, 28 Rep., 1220; Stepp v. Hatcher, 23 Rep., 2441.

As the judgment must be reversed on another ground, presently to be mentioned, which will result in another trial of the case in the court below, we deem it improper to discuss appellant's complaint of the amount of the verdict, further than to say that the record furnishes no reason for our declaring it to be the result of passion or prejudice on the part of the jury. The evidence conduced to show that his injuries were and are of a serious and permanent character; that his body was crushed, his spine and bladder so injured as to cause blood to issue from the bladder for a week or more, and his sexual organs so impaired as to destroy

one of his testicles and greatly lessen his desire for sexual intercourse.

The third complaint of appellant is not, in our opinion, sustained by anything appearing in the record. It is, in substance, that a juror informed appellee, previous to the trial, that if he could succeed in getting him on the jury, he would see to his getting a large verdict, in return for which appellee was to purchase of the juror his farm at a price mentioned by the latter. Proof of this alleged arrangement was furnished by the affidavit of an ex-convict, whose conviction of a felony was shown by a certified copy of the judgment of the court in which his trial occurred, and his confinement in the penitentiary pursuant to the judgment, by other sufficient evidence. The statements of the affidavit in question were specifically denied and contradicted by the affidavits of the juror attempted to be implicated and that of appellee, also the joint affidavit of the two attorneys of the latter containing a statement of facts strongly corroborating the statements contained in the affidavits of appellee and the juror. In view of the bad reputation of the affiant, by whose affidavit it was attempted to show the alleged conspiracy between the juror therein named and appellee, the unreasonableness of the story presented by the affidavit, and the positive contradiction thereof furnished by the affidavits of the juror, appellee and the two attorneys of the latter, we are constrained to believe both appellee and the juror guiltless of the bribery charged.

It should here be mentioned that, in connection with the affidavit of the ex-convict referred to, appellant filed that of another member of the jury in which it was, in substance, stated that the juror attempted to be implicated and his father, who was also a member of the jury, held out for a while for returning a verdict of $5,000.00 in behalf of appellee, though both later agreed to the verdict of $3,285.00 returned by the jury. The facts stated in the affidavit of the second juror, if such affidavit could be admitted as competent evidence, do not prove the charge of bribery made in the affidavit of the ex-convict. The affidavit, however, was correctly held by the trial court to be incompetent for any purpose, for a verdict cannot be impeached by the affidavits of jurors who were instrumental in finding and returning it. As well stated in Eversole v. White, 112 Ky., 193: "If

such a practice should be indulged there would be no stability in verdicts and a party obtaining one would have no assurance that it might not be impeached by some of the jurors who returned it. Courts cannot be too cautious to prevent the mischief that is apt to flow from such a practice.''

The fourth and final ground urged by appellant for a reversal rests upon its complaint of so much of instruction number one, given by the trial court, as attempted to advise the jury of the measure of damages to be applied, in the event their verdict should be for appellee. The instruction, as a whole, reads as follows:

''1. The court instructs the jury if they shall believe from all evidence in this case that the defendant, Lexington & Eastern Railway Company, its agents and servants, carelessly and negligently, without giving plaintiff timely signals or sufficient warning by ringing of the bells, blowing the whistle, or, through one or more of its trainmen, giving reasonable notice, or warning to the plaintiff of the approach of its train of cars, or carelessly or negligently backed its engine and train of cars with great force, momentum and rapidity into a car on which plaintiff was wiring a load of ties on Waller's switch in this county, and that the plaintiff did not know of the approach of said train of cars on said switch or by the exercise of ordinary care could not have known of the approach of same, and knocked him therefrom, dragged, cut, bruised and internally injured his spine, sexual organs and bladder, as the direct result from such careless and negligent operation, if any, of its train of cars while backing on said switch, then they shall find for the plaintiff such damages, if any, as will reasonably and fairly compensate him for loss of time, if any, not exceeding $285.00 and for his physical and mental suffering resulting therefrom, if any, and also for any future physical and mental suffering that may result therefrom, and for mental anguish, permanent impairment of his health and strength and the diminution of his power to earn money, if any, and if they shall believe from the evidence that said injuries are permanent, such damages, if any, as may result therefrom, in all not to exceed the sum of $10,000.00 and unless they shall so believe they shall find for the defendant company.''

The measure of damages, as stated in the instruction, is radically wrong, in that, in addition to the loss of

time, physical and mental suffering that may have resulted to appellee from the injuries sustained, it advised the jury that they might also compensate him "for mental anguish," which had theretofore been included in the terms "mental suffering;" and also for the "permanent impairment of his health and strength," and for "diminution of his power to earn money;" and if they believed from the evidence that "such injuries are permanent," allow him such damages as may result therefrom in all not to exceed $10,000. In brief, the instruction authorized a recovery by appellee of damages for *mental suffering,* other damages for *mental anguish,* additional damages for the *permanent impairment of his health and strength,* further damages for the *diminution of his power to earn money,* and yet more damages *if his injuries were believed by the jury to be permanent.* Manifestly this instruction must have been confusing and misleading to the jury.

In L. & N. R. R. Co. v. Moore, 150 Ky., 692, an instruction was condemned which, in addition to allowing a recovery by the plaintiff for the permanent impairment of his power to earn money, improperly allowed the jury to award him damages on account of any diminution of his power "to pursue the course of life he might otherwise have done." In commenting upon this instruction, we said: "If the petition had alleged an impairment of appellee's power to earn money or that he was permanently injured, the instruction as to this item of damages should have confined the recovery to compensation for loss, if any, of such power; therefore, in allowing a recovery for such a sum, in addition, as would compensate him for diminution of his power, to 'pursue the course of life he might have otherwise have done,' the instruction erroneously introduced into the case, and gave emphasis to, what the jury must have regarded an independent element of damages not included in that part of the instruction which authorized a recovery for the impairment of appellee's ability to earn money. A similar expression in an instruction as to the measure of damages received our disapproval in the case of the Louisville & Nashville Railroad Co. v. Logsden, 114 Ky., 746, evidently upon the ground we have indicated. Instructions should be predicated upon the issues made by the pleadings and the facts appertaining to such issues furnished by competent evidence introduced on the trial; and in writing them brevity and

clearness of expression should be used by the court, in order that their meaning may readily be understood by the jury." Central Kentucky Traction Co. v. Chapman, 130 Ky., 342; Blue Grass Traction Co. v. Ingles, 140 Ky., 488.

It is true that, in the instant case, an instruction in correct form on the measure of damages was not asked by appellant, but such failure did not relieve the trial court of the duty of correctly stating the measure of damages in the single instruction it gave upon that subject. Having attempted to instruct the jury on that feature of the case, it was the duty of the court to properly and correctly state the law. Its failure to do so was prejudicial to the rights of the appellant, and the latter's having objected to the instruction, its failure to ask an instruction on that point does not estop it from complaining in this court of the instruction given.

Upon another trial of the case, the circuit court, in lieu of the measure of damages stated in instruction number one, should add to that instruction on the same subject, the following words: Then they should find for plaintiff such damages, if any, as they may believe from the evidence will reasonably compensate him for the physical and mental sufferings, if any of either, the value, not exceeding $285.00, of the time, if any, lost from his usual work or business; and for the permanent impairment, if any, of his power to earn money, that may have resulted to and been directly caused plaintiff by the negligence, if any, of the defendant's servants complained of. But the damages, if any are allowed, should not, altogether, exceed $10,000, the amount claimed in the petition.

For the reasons indicated, the judgment is reversed and cause remanded for a new trial consistent with the opinion.