# Louisville & Nashville Railroad Company v. Chadwell's Administrator.

(Decided February 2, 1926.)

Appeal from Knox Circuit Court.

1.  Carriers—Agents in Charge of Passenger Train Must Afford Reasonable Opportunity and Time for Passenger to Alight at Destination.—Agents in charge of passenger train must afford reason-

able opportunity and time for a passenger to alight in safety at his destination, including notice of train's approach to station, and failure to do so is negligence.

2. Carriers—Not Negligence Per Se for Passenger to Alight at Station from Slowly Moving Train.—It is not negligence per se for a passenger to alight at his station from a slowly moving train.

3. Carriers—Attempt to Alight from Train Traveling at Such Speed as to be Apparent to Ordinarily Prudent Person that it Would be Dangerous Constitutes Negligence Per Se.—Where train is travel-ing at such a rate of speed as to make it apparent to an ordinarily prudent person that it would be dangerous to attempt to alight, attempt of passenger to alight would constitute negligence per se, and defeat recovery for injuries.

4. Carriers—Negligence in Alighting from Moving Train Determined by Speed of Train and Surrounding Circumstances.—Question of negligence in alighting from a moving train is to be determined not only by speed of train, but also by the surrounding circum-stances and conduct of passenger at the time.

5. Carriers—Woman Attempting to Alight from Moving Train Held Contributorily Negligent.—Attempt of woman 44 years of age and in delicate health to alight from moving train without having had any previous experience held contributory negligence, in view of speed of train.

WOODWARD, WARFIELD & DAWSON and BLACK, BLACK & OWENS for appellant.

GOLDEN & GOLDEN for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS— Reversing.

In alighting from a moving train as it left Heidrick, a station on the L. & N. Railroad, Mrs. Flora May Chad-well, a passenger, was thrown to the ground and received injuries from which she died a few days later. In a suit for personal injuries, her personal representative recov-ered a judgment for $2,250.00 against that company, and it has appealed.

Deceased was forty-four years of age and rather delicate in health, though improving. She had been under the care of a physician at Pineville for several months and on the occasion of the injury was returning from a visit to his office, though it seems that these facts were not disclosed to the agents in charge of the train.

There is a conflict in the testimony as to whether the station was announced in the car before the train's ar-rival, and as to the length of time it remained at the sta-

tion. But it is claimed by appellant that under the circumstances of this case, it was negligence upon the part of deceased to step from the train, even if it was moving only at the minimum rate of speed fixed by the witnesses, and that on this point it was entitled to a peremptory instruction in its favor.

Plaintiff introduced three eye-witnesses. The first, Chill Brackett, testifies that he was riding on the front seat of the ladies' coach, facing the rear of the coach. He did not hear the station announced and observed that the train stopped but a short time; "It was fixing to move out and the people getting on and off in a weaving condition." That when he first saw Mrs. Chadwell "she was going from the back seat of the car, trying to get through in the great crowd. I was looking right back, you know, and she was trying—these people was crowding and she was making her way, trying to get out, she came right to where I was and the train was getting along pretty fast then and she went out of the car, and I allowed she went into the smoking car; I was not thinking of the woman undertaking to get off at that time, and I never seen her any more after she went out the door, but the train was moving out pretty fast."

On cross-examination he was asked: "Was not the train moving when you saw her start through the coach to the front end?" A. "Yes, it was moving; she was trying to get through, and it was moving out pretty well when I raised my head and saw her."

Henry Daniel, the second witness, is not clear as to which coach he was riding in, but apparently it was the same one in which intestate was riding and about a third of the way from the rear end. He did not hear the station called and did not observe Mrs. Chadwell; he was talking to some one and as the train started the passengers were coming into the coach and he went to the rear of the coach and got off; he thinks the stop was 19 or 20 seconds; he got off the train facing in the direction it was going and had to run to keep from falling, and in doing this almost ran upon Mrs. Chadwell, who was rolling on the ground.

Charlie Stewart was sitting on an express wagon about thirty feet from the track. He states: "I seen her come to the door just after the time the train started and she started on out the train and she walked off the steps and her head hit the rails. She hit her head against the switch rails like you would hit it with a green gourd hit-

ting the ground." He was asked: Q. "Where was she when the train first started?" A. "She was right in the door when the train started." Q. "You mean upon the plaform?" A. "Yes, sir; coming out of the coach." He further states that the train stopped about as long as usual and started in the ordinary manner; that the train had moved a car's length or half a car's length at the time she came out, but does not attempt to fix the speed at which it was moving.

On the other hand, the evidence for the defense is that the station was regularly announced by the flagman and that the train stopped the usual length of time; that a number of passengers left the train at that point and others got on; that ten cases of eggs and other baggage and parcel post were loaded, the stop being from three to five minutes. The conductor and flagman were stationed at the front of the ladies' car; they testify that all of the passengers for that station, indicating an intention to get off, alighted before those getting on the train were permitted to board it; that after this was done the signal to start was given; the conductor went to the front of the colored car and the flagman went up the front steps of the ladies' car and back into it, and neither of them knew anything of the accident or saw Mrs. Chadwell trying to get off.

Charlie B. Jones was a passenger on the train and stepped off at Heidrick to see a party; not finding him he started up the rear steps of the smoker; about the second step he met a lady; there were two or three persons on the platform and she turned to go down the side next to him; he told her, "Lady, you can't get off now; the train will throw you." She seemed as though she was not paying any attention to him and kept going down, and as she went on down she made a step as if the train was standing, and he heard her head hit the steel rail. Witness rode the train a short distance further and went back to her. At the time he spoke to her on the steps she was within two feet of him, though he does not know whether she understood him. The train had then traveled three or four rail lengths.

W. G. Jones got off the train at Heidrick and saw the deceased as she came down the steps. The train had then moved as much as three car lengths. Other witnesses testify as to the speed of the train at the time deceased stepped off; one fixed it at about five miles per hour while the others range from eight to fifteen.

Obviously it is the duty of the agents in charge of a passenger train to afford reasonable opportunity and time for a passenger to alight in safety at his destination, and this includes notice of the train's approach to the station. A failure to discharge either of these duties is negligence. The rule is also established in this jurisdiction that it is not negligence *per se* for a passenger to alight at his station from a slowly moving train. L. & N. R. R. Co. v. Eakins, 103 Ky. 472; I. C. R. R. Co. v. Whittaker, 22 Rep. 395; L. & N. R. R. Co. v. Arnold, 31 Rep. 414; C., N. O. & T. P. Ry. Co. v. Frances, 187 Ky. 704; Dailey v. S. Cov. & Cin. St. Ry. Co., 158 Ky. 64. These opinions apparently ignore the question of proximate cause and proceed upon the theory that under the circumstances indicated the passenger is confronted with the alternative of being carried by his station, or of stepping from the slowly moving train; and if without negligence on his part he adopts the latter alternative and is thereby injured, he is entitled to compensation therefor, the case turning upon the issue as to contributory negligence, and this is a question for the jury, unless the evidence shows without contradiction that the train is traveling at such a rate of speed as to make it apparent to an ordinarily prudent person that it would be dangerous to attempt to alight under existing conditions; in which event such conduct would constitute negligence *per se,* and authorize a peremptory instruction for defendant. Hayden v. C. N. & G. R. R. Co., 160 Ky. 836; L. & N. R. R. v. Derrickson, 170 Ky. 334; Glasscock v. C., N. O. & T. P. Ry. Co., 140 Ky. 720; L. & N. R. R. v. Moore, 150 Ky. 692; Hulette v. L. & N. R. R., 15 L. R. 178; Dailey v. S. Cov. & Cinti. St. Ry. Co., *supra.*

Applying this law to the facts, *supra,* it cannot be doubted that the train was moving rapidly at the time deceased undertook to alight. Plaintiff's witness, Brackett, so states, and it was shown that he did not anticipate that she would attempt to alight. When the witness, Daniels, alighted he had to run in the direction the train was moving to avoid falling. In so doing he had to stop to avoid trampling her body, which was still rolling, showing that the two had alighted from different ends of the car about the same time and evidencing that the train had attained a high momentum. The only other eye-witness for plaintiff, Stewart, does not undertake to estimate the speed of the train, though he thinks that it had run about a car or half a car length. Defendant's wit-

nesses put the distance greater and it is not claimed by anyone that the train was moving slower than five miles per hour at the time she alighted. Perhaps persons experienced in boarding and alighting from moving trains might have alighted from this one with reasonable safety. But it must be remembered that deceased was a female, whose movements were more or less impeded by her clothing; that she was 44 years of age and recovering from a spell of sickness; that she knew nothing of alighting from a moving train, is evidenced by the fact that instead of facing in the direction the train was moving, she stepped off at right angles with it, and the question of negligence in alighting from a moving train is to be determined not only by the speed of the train, but also by the surrounding conditions and the conduct of the passenger at the time. Thus considered, it cannot be doubted that it was dangerous for a person like deceased in her then condition to alight in the manner she did from the rapidly moving train; indeed it must be admitted that her conduct in so doing showed an entire absence of care for her own safety, and though the unfortunate result excites our pity, we cannot shut our eyes to the fact that she at least contributed to her own injury. It follows that the court should have peremptorily instructed the jury to find for the defendant.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.