## Glascock v. Cincinnati, New Orleans & Texas Pacific Railway Co., et al.

(Decided November 23, 1910.)

### Appeal from Grant Circuit Court.

1. Railroads—Train Approaching Station—Passenger Leaving Car While in Motion—Damages Not Recoverable.—All who ride on trains know that the announcement is usually made of the train's approach to a station, and the car doors opened before it actually reaches it, to enable the passengers to leave the cars when the train stops, but these acts do not constitute an invitation to the passengers to get off before it stops, and a passenger who under these circumstances voluntarily undertakes to leave the train while in rapid motion is guilty of negligence and is not entitled to damages if thereby injured.

2. Same—Conductor Accepting Ticket.—Undertaking to Stop—If, as appellant's counsel contends, appellant was unaware of the arrangement between his companion, Billiter, and the engineer as to the slowing down of the train at Williamstown, and was relying upon the conductor's acceptance of his ticket as an undertaking to stop the train there, and upon hearing the station announced and seeing the porter open the car door he voluntarily got off the train while it was in motion, he failed to show himself entitled to recover damages.

O. S. HOGAN and CLORE, DICKERSON & CLAYTON, for Appellant.

A. D. DeJARNETTE, for Appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

In attempting to alight from one of appellee's passenger trains as it approached Williamstown and while it was in motion, appellant was thrown upon a side-track and his arm fractured. For the injuries thereby sustained he brought this action against appellee and its conductor to recover damages. The trial resulted in a verdict and judgment for appellees and the refusal of the circuit court to grant appellant a new trial gave cause for this appeal.

On Sunday, November 17th, 1907, appellant and S. M. Billiter, a companion, desiring to go to Somerset, each purchased of appellee's ticket agent, at Williamstown, a one-day, round trip, reduced rate ticket, to Science Hill and return. The tickets were good for that day only on a train that ran from Cincinnati to Science Hill and return, stopping at Williamstown each way. Science Hill is four miles north of Somerset, consequently the train for which the tickets in question were purchased by appellant and his companion ran no further than Science Hill, and could not take appellant and Billiter to Somerset, and no train which ran from Somerset to Cincinnati that day made a stop either at Science Hill or Williamstown; all of which was known to appellant and Billiter by explanation from appellee's agent at Williamstown at the time of their purchase of the tickets.

After riding from Williamstown to Lexington on the Science Hill train appellant and Billiter, in order to reach Somerset, there left it and took a fast train which would pass through and stop at Somerset in going south, and upon this train they arrived at Somerset about 12:30 o'clock, using their tickets purchased at Williamstown to ride to Science Hill and paying fare from the latter place to Somerset.

At 6:30 p. m. of the same day they left Somerset upon a fast train bound for Cincinnati which would not, as they knew, stop at Science Hill or Williamstown. Upon getting on the train they entered the dining car for the purpose of eating their dinner and were soon

approached by the train conductor who demanded their tickets; whereupon the two tickets purchased by appellant and Billiter at Williamstown that morning and upon which they were entitled to ride on a different train from Williamstown to Science Hill and return, were handed the conductor by the latter. The conductor having examined the tickets, informed appellant and Billiter that they were not good on his train and he could not take them, and would not do so, as the train could not be stopped at Williamstown; but upon Billiter's assurance that he would, upon the train's reaching Lexington, get permission from appellee's road superintendent there for the train to stop at Williamstown, or failing in this that he and appellant would leave the train at some necessary stop before reaching Williamstown, or continue on to Cincinnati and pay the regular fare from Williamstown thereto, the conductor was induced to retain the return tickets and accept them in payment of appellant's and Billiter's passage as far as Williamstown, and to likewise accept from them the cash fare of each from Somerset to Science Hill.

Upon the arrival of the train at Lexington, Billiter went to the office of appellee's superintendent, but not finding him, was unable to get permission for the train to stop at Williamstown. However, before leaving Lexington, Billiter made an arrangement with the engineer whereby the latter agreed to so reduce the speed of the train in passing Williamstown, without stopping it, that appellant and Billiter could alight therefrom at that place. This arrangement Billiter said was communicated to appellant by him and he expressed his satisfaction with same.

Before reaching Wiliamstown appellant and Billiter placed themselves in the coach next to the baggage car, and the latter informed the train porter and conductor of the agreement with the engineer and further told the conductor that he "intended to get off at Williamstown if he had to pull the emergency bell," to which the conductor replied "For Christ's sake don't do that, you will break all the dishes on the dining room table."

When the train got within a half mile of Williamstown the engineer began to reduce its speed as promised, but to just what rate is not clear. It appears, however, to have been running slow enough for both appellant and

Billiter to believe it safe for them to jump off, as they did so, while the porter, who had opened the door for them, held a lantern in such a way as to enable them to see where to alight. Billiter took the lead in jumping from the train and before doing so informed appellant, who stood on the car steps behind and near him, that the speed of the train was rather fast but that he would "chance it," and advised appellant to jump as he saw him do, but further told him that if afraid to attempt to alight it would be safer for him to remain on the train. Appellant, however, followed him in jumping from the train but instead of alighting on his feet as Billiter had done, he fell and fractured his arm.

Appellant denied hearing the conversation in the dining car between Billiter and the conductor when the tickets were handed the latter by Billiter, also the conversation had by himself and Billiter with appellee's ticket agent at Williamstown when the tickets were purchased; but admitted that he knew of Billiter's attempt to see the road superintendent when the train reached Lexington and of his object in doing so, denying, however, that Billiter told him of the arrangement he had made with the engineer for reducing the speed of the train to enable them to get off at Williamstown.

Billiter who seemed to be a wholly disinterested witness testified as to the conversation with both the ticket agent and conductor and that appellant was present at and heard both conversations. The ticket agent corroborated Billiter as to the conversation that took place when the tickets were purchased, but the conductor, though offered as a witness by appellees, was objected to by appellant and not permitted by the court to testify for the reason that, being himself a party to the action, appellees' counsel had erroneously introduced other witnesses before offering his testimony.

Admitting, as he did, his presence at the time of the conversations referred to and in view of his connection with the subject matter of each conversation, it is incredible that appellant should have failed to hear what was said; but independently of those conversations, it was patent from the wording of his ticket and the admissions of his reply as to the conditions under which it was purchased, that appellant knew it entitled him to be returned to Williamstown only on the train for which it was sold

and which, on its way back that afternoon from Science Hill to Cincinnati, would stop at Williamstown. Added to this knowledge of his rights under the ticket, was the further information undoubtedly given him by Billiter of the arrangement with the engineer of the train upon which they were returning for "slowing" it at Williams- town that they might get off there. These facts clearly show that appellant knew the train upon which he was returning from Somerset would not stop upon its arrival at Williamstown and that in attempting to alight from it there he would have to do so while in motion and after some reduction of its speed. Whether he and Billiter jumped from the train before its speed had been reduced to the degree intended by the engineer does not fully appear, but the fact that they did so a half mile south of the station would seem to indicate that they acted prematurely and that a little delay would have brought a greater slacken- ing of the train's speed and enabled them to alight at the station and on safer ground. At any rate in attempt- ing to jump from the train under the circumstances at- tending that act, they must be held to have knowingly in- curred the danger to which they subjected themselves. Appellant did not testify that the conductor or any of the trainmen called the station, but that the conductor merely told him it was Williamstown and he thought the conductor opened the door. According to the testimony of Billiter and the porter the former told appellant and Billiter they were "slowing down" for Williamstown and the porter, not the conductor, opened the door and held the light for appellant and Billiter to alight. Billiter, the porter and baggage master, all testify that the con- ductor was not present when appellant and Billiter got off the train.

Although the night was dark and the train was mov- ing at a speed that seemed to render it unsafe to attempt to alight from it, these conditions were manifest to ap- pellant as he stood on the car steps waiting for Billiter to first leave the train, and the last words of the latter be- fore leaping in the dark warned him of the danger to be encountered in following him. It was not claimed by ap- pellant that the conductor or any other member of the train crew advised him to leave the train or gave him any assurance that he could safely do so, but insisted

that the act of the conductor or porter in opening the door and telling him the train had arrived at Williamstown, amounted to an invitation to him to leave the train when and as he did; and that the high degree of care they owed him as a passenger required them to warn him of the danger of getting off the train under the circumstances attending his act.

If, as contended by his counsel, appellant was unaware of the arrangement between Billiter and the engineer as to the "slowing down" of the train at Williamstown and was relying upon the conductor's acceptance of his ticket as an undertaking to stop the train there and upon hearing that station announced and seeing the porter open the car door he voluntarily got off the train while it was in motion, he failed to show himself entitled to recover.

All who ride upon trains know that the announcement is usually made of the train's approach to the station and the car doors opened before it actually reaches it, to enable the passengers to leave the cars when the train stops, but these acts do not constitute an invitation to the passengers to get off the train before it stops, and a passenger, who under these circumstances, voluntarily undertakes to leave the train while in rapid motion, is guilty of negligence. Hughlett v. L. & N. R. R. Co., 15 R. 178; Adams' Adm'r v. L. & N. R. R. Co., 82 Ky. 608; Thompson's Negligence, Vol. 3, Sec. 2881.

On the other hand, if as appellant's own conduct conduced to show and the evidence on the whole conclusively proved, he, knowing of the engineer's agreement with Billiter to "slow down" the speed of the train without stopping it at Williamstown, voluntarily undertook with the latter the risk of attempting to jump therefrom and did so before it had sufficiently slackened its speed for him to alight in safety, and thereby recovered his injuries, he was not entitled to recover.

In view of these facts the conclusion is inevitable that his injuries resulted from his own negligence, and this being true, the trial court should, at the conclusion of the evidence, have peremptorily instructed the jury to find for appellees.

This conclusion renders consideration of the instructions, under which the case was submitted to the jury, unnecessary. We will say, however, that they cannot be

condemned upon the grounds urged by appellant's counsel as they fairly presented to the jury his theory of the case. The evidence as to the conversations between appellee's ticket agent and conductor and Billiter was competent, the conversations having occurred in appellant's presence and hearing.

Wherefore, the judgment is affirmed.

Whole court sitting.