## Illinois Central Railroad Company v. Day, et al.

(Decided March 5, 1915.)

### Appeal from Hopkins Circuit Court.

1. Negligence—Personal Injuries—Burden of Proof.—In determining liability for an injury suffered, the fundamental question is, did

the party charged cause the injury; and, in determining defendant's liability, the burden of showing negligence requires the plaintiff to show that the injury suffered was the direct result of the defendant's negligence.

2. Negligence—Damages—Evidence.—If a plaintiff goes no further than to present evidence showing that the damage may have resulted from one of several causes, and that only one of these cause can be attributed to defendant's negligence, the plaintiff fails to make out a case.

3. Railroads—Fires—Failure of Proof.—Where hay stacks, located in a field 160 yards from a railroad track, were destroyed by fire, and the proof failed to show that any railroad trains had passed the field at any time near the time the fire occurred, or that any passing engine had emitted sparks or cinders, there was a total failure of proof upon the plaintiff's part to show that the railroad company caused the fire, and the trial court should have peremptorily instructed the jury to find for the defendant.

GORDON & GORDON & COX, R. V. FLETCHER and TRABUE, DOOLAN & COX for appellant.

LAFFOON & WADDILL for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER—Reversing.

The appellees sued the appellant railroad company for $394.00 damages, for the loss by fire of three stacks of hay, fifty-five rods of fencing, and fourteen acres of new meadow. The petition claimed the fire was caused by the negligent operation of appellant's trains, and the appellees having recovered a verdict and judgment for $300.00, the company appeals.

The fire began on Saturday night, August 30th, 1913, and extended into the next day.

Appellees own a field lying on the south side of appellant's railroad track, between Hamby Station and Ilsley, Kentucky, upon which the fire in question occurred. The railroad track runs east and west, and is on a level with appellees' field, and separated from it by a ditch. Caney Creek has the shape of a horse shoe, and entirely surrounds appellees' field, the railroad ditch affording a short cut across the open end of the horse shoe. There is a narrow strip of woodland on the east side of appellees' field, next to Caney Creek. The field was fenced partly with woven wire, partly with barbed wire, and partly with ordinary fence rails.

The three stacks of hay that were burned were located along the eastern fence, near the woodland above mentioned, and were 160 yards from the railroad track. The fire burned these three hay stacks and spread over a large part of the field, extending from the hay stacks to the northeast corner of the field. On Saturday evening the wind was blowing from the southwest, and toward the railroad track.

For a reversal appellant insists that its motion for a peremptory instruction should have been sustained, because there was no evidence, as it claims, even tending to show that the fire was caused by any of its trains.

A decision of that question requires an examination of the evidence relating to the cause of the fire. The testimony of several witnesses who did not see the fire, but gave their opinion as to its cause, will be disregarded as being of no value as evidence.

Neither of the appellees was at the fire and neither of them saw the field until several days afterwards.

Furthermore, J. E. Day, one of the appellees, admitted that about June 1st a notice had been put on his barn door warning him not to raise any tobacco on his farm, and that, although no tobacco was raised on the farm where the fire occurred, Alexander raised tobacco on another farm nearby belonging to the appellees.

J. C. Alexander saw the fire about 7 o'clock on Saturday night, while going to church. He was, however, about a mile away and did not know where it was, and did not find out until the next day. He went down to the field about 3 o'clock on Sunday, and found the fire had burned over appellees' meadow and had destroyed some hay and fencing. He saw no signs of fire in the railroad ditch. The fire had burned up to the wire fence. There was no fire burning at that time in the west end of the field, except old chunks that had not been put out. Alexander had theretofore found the notice on the barn door forbidding Day's tenants to raise tobacco, and he gave this notice to Day.

Silas Menser, a track walker for the appellant, passed the field in question on Sunday morning between 8 and 9 o'clock, and at that time saw the fire at the lower end of the field, but it had not then extended over the field. He saw the fire on the west side of the field, and it looked like it had about gone out. He says there was no fire in the upper part toward the hay stacks at that time. Men-

ser continued track walking for two miles to the lower end of his section, and when he came back the field was in about the same condition as when he first saw it. He next saw it on Monday morning about 8 or 9 o'clock, and found the entire field had been burned off. He did not see the hay stacks, and made no examination of the fire. He further said four passenger trains and some freight trains usually pass over this road daily, including Sunday.

This was the substance of the testimony for the appellees upon the question of the origin of the fire.

Appellant showed by Thompson, a section foreman, that he passed the field in question at 5:15 o'clock on Saturday afternoon, and that there was no fire in the field at that time.

Messmore, a section hand, saw the field at 6 o'clock on Saturday evening, before the fire. He says there was no combustible matter to catch fire or burn in the right-of-way ditch; that there was growing grass and weeds along the right-of-way, but there was no driftwood in the ditch. He next saw the place on Monday morning, and says the field had all burned and that although no grass had been burned in the ditch next to the railroad track, chunks and fence posts were smoking nearby. There was no driftwood in the ditch, or other matter, to make it necessary to clean out the ditch. He said twelve or more trains usually passed over the track at that point daily, while some backed in on the switch nearby.

James Thompson, a section hand, passed the field in question on Saturday evening before the fire, and did not see it again until Monday morning. He says there was no sign of fire in the railroad ditch on Monday, nor was there anything in the railroad ditch that could catch on fire; that he had cleaned the ditch out after the spring rise; and that there was no driftwood or anything that could catch fire in the ditch at the time of the fire.

John Glover, a carpenter, working for Dimmitt Woodruff, at Hamby Station, saw the fire on Saturday night about 9 o'clock, as he was on his way home. The three hay stacks were then on fire. Glover went to the hay stacks and says they looked like they had been burning for some time, the fire then being entirely around them. He further says the wind was blowing out of the southwest, coming in the direction from the fire toward the railroad; that the fire looked like it was about to go out;

and, after a short stay, he went home. He says the fire was spreading slightly in every direction from the hay stacks, and traveling a little faster toward the railroad track; that there was no fire except around the hay stacks, and no fire along the railroad right-of-way, nor any in the field except around the hay stacks, and none in the ditch along the railroad. He was explicit in his statement that the wind was blowing toward the railroad, and carried the fire and smoke over into the woodland, to the north and east of the hay stacks.

Glover did not tell either of the Days, or anyone else, about the fire, giving as his reason that he did not know whose field it was; but that he afterwards told Woodruff about it, saying he did not want to be a witness. Glover's character has been attacked to some extent, and supported to a greater extent. It is conceded upon either side that Glover's testimony is the most important evidence in the case; and, although he was impeached, the weight to be given to his evidence was for the jury to determine.

Lon Alexander, a tenant of appellees, testified that on Saturday night the wind was from the southwest, and that he heard of the fire from his children when they returned from church. He went to the field Sunday morning between 9 and 11 o'clock, and found that the fire was then burning from the hay stacks toward the railroad track; that the hay stacks had been entirely destroyed. He saw no fire in the railroad ditch, nor any signs where there had been any fire in the ditch.

Several other witnesses testified as to the value of the destroyed property, but the foregoing was all the testimony that in any way bore upon the origin of the fire.

The trial court submitted the case to the jury upon the theory that there was proof that the defendant failed to keep its right-of-way free from weeds, high grass, or dead timber, which, from their nature and condition, were combustible material, liable to take and communicate fire from passing trains to abutting premises; and that such combustible material on the right-of-way caught fire from passing trains and communicated to plaintiffs' premises, burning the fences, meadow and hay in question.

Appellant insists there was no evidence introduced on either side which could justify this theory, or its submission to the jury.

There was no attempt to prove that any fire from passing trains set fire to combustible matter in the right-of-way, or set fire to plaintiffs' premises at all. There was no proof that appellant failed to keep its right-of-way free from weeds, high grass or dead timber of a combustible nature. While there was some evidence to the effect that there was growing grass upon the right-of-way, there is no evidence of any combustible weeds or grass being on the right-of-way.

The fire must have started some time between 6 o'clock Saturday evening, when Messmore says there was no fire, and 7 o'clock that night, when the fire was seen by Alexander as he was going to church.

There is no evidence whatever that any train passed the field between 6 o'clock Saturday evening and the time the fire was first discovered, about 7 o'clock that night; and, of course, there being no proof of a passing train or trains, there could be no evidence that sparks or cinders were emitted by passing engines, or that any locomotive, at any time or place, threw out fire, or sparks, or cinders, that could have caused the fire in question.

On the contrary, the testimony is all to the effect that the wind was blowing from the southwest, and that the fire when first seen was extending from the hay stacks toward the railroad track, rather than from the railroad track toward the hay stacks. Even though the proof had shown that the fire had started in the railroad ditch, that would not make out a case in the absence of proof tending to show, in some measure, that the fire was started by sparks or cinders escaping from some engine on appellant's railroad. We have, therefore, not a case of weak proof upon the origin of the fire, but an entire absence of such proof.

Under the rule laid down in C., N. O. & T. P. Ry. Co. v. Sadieville Milling Co., 137 Ky., 568; L. & N. R. R. Co. v. Hamburg-Bremen Fire Ins. Co., 152 Ky., 510; C. & O. Ry. Co. v. Bagby, 155 Ky., 420, and in other cases, there is no liability against appellant under the facts of this case, for the reason there is nothing in the evidence that would indicate that the proximate cause of the burning of appellees' hay and other property was due to the fault of the appellant.

In the Bagby case, *supra,* we said:

"In determining liability for an injury suffered the fundamental question is, did the party charged cause the injury? And, in determining defendant's liability, the burden of showing negligence requires the plaintiff to show that the injury suffered was the direct result of the defendant's negligence. If he goes no further than to present evidence showing that the injury may have resulted from one of several causes, and that only one of these causes can be attributed to defendant's negligence, the plaintiff fails to make out a case.

"As was said in L. & N. R. R. Co. v. Wathen, 22 Ky. L. R., 82, 49 S. W., 185, a defendant's right should not be guessed away for one upon whom the burden rests to establish the cause of action against him. In Hughes v. Cincinnati, etc. Railroad Co., 91 Ky., 526, we said that, where the evidence is equally consistent with any one of two or more states of case upon which one may theorize as to the cause of the accident, it is not competent for the judge to leave the matter to the jury. The same doctrine is announced in Louisville Gas Company v. Kaufman-Straus & Company, 105 Ky., 156, and in Hurt v. L. & N. R. R. Co., 116 Ky., 545.

"Acting under these primary rules which fix one's liability on the one hand, or excuse him on the other, the rule is that a peremptory instruction ought to be given for the defendant when, after admitting every fact shown by plaintiff's evidence to be true, as well as all reasonable inferences that can be drawn therefrom, the plaintiff has failed to establish his case. Miller v. Metropolitan Life Ins. Co., 28 Ky. Law Rep., 225, 89 S. W., 183; Fugate v. City of Somerset, 97 Ky., 48; Southern Ry. Co. v. Goddard, 121 Ky., 577."

Applying this rule to the facts of the case before us, and admitting as true every fact shown by appellees' proof, as well as every reasonable inference that could be drawn therefrom, no act of the appellant, either negligent or otherwise, was shown to have caused the burning of appellees' property. At best, the finding of the jury was a mere conjecture, unsupported by any proof.

The court should have sustained appellant's motion for a peremptory instruction.

Judgment reversed and action remanded for further proceedings consistent with this opinion.