## Gayle's Administrator v. Louisville & Nashville Railroad Company.

(Decided March 10, 1915.)

### Appeal from Carroll Circuit Court.

1. Railroads—Train Approaching Station—Invitation to Alight.— The announcement of a station and the opening of the vestibule doors is not an invitation to passengers to alight until after the train stops.

2. Railroads—Injury to Passenger—Action—Question for Jury—Direction of Verdict.—Where plaintiff claimed that his decedent, a passenger, was negligently jerked from defendant's train and killed, and it was just as probable that decedent had jumped from the train as it was that he had been jerked therefrom by the negligence of defendant's employes in charge of the train, and the cause of the accident was entirely a matter of speculation and conjecture, and any attempt to fix the responsibility for the accident would be merely guess work, the court properly

directed a verdict in favor of defendant on the theory that there was nothing to submit to the jury.

H. K. BOURNE, G. A. DONALDSON and J. A. DONALDSON for appellant.

GEORGE B. WINSLOW and BENJAMIN D. WARFIELD for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In this action by F. M. Gayle, as administrator of James Gayle, against the Louisville & Nashville Railroad Company, to recover damages for the death of his decedent, the trial court, at the conclusion of all the evidence, directed a verdict in favor of the defendant. Plaintiff appeals. Whether or not the peremptory should have gone is the only question we deem it necessary to consider.

The facts are these:

On October 29, 1910, the decedent purchased a ticket from Campbellsburg to Worthville, and took passage on defendant's train No. 6. After the train crossed the bridge, which is about a half-mile from Worthville, it shut off steam, slackened speed, and rolled into the town. When the train was between a quarter and a half a mile from the station, the brakeman announced the station, and soon after opened the vestibule door. As the train approached the station it was moving at a pretty good speed. When the station was reached the conductor announced that a man had stepped or fallen from the train. On going back to a point near a public street, and not far from the section house, the decedent was found. He was severely injured, and died in a few hours. The place where decedent was found was estimated by witnesses to be from three to six hundred feet from the station. Henry Ogden, who was a passenger on the train, testified that just before reaching Worthville he passed from the coach just behind the smoker into the smoker, and after reaching the bridge the train slackened its speed, but ran pretty fast. When he reached the smoker he stopped to talk to John Garvey. When the train got close to Worthville the train made a jerk and jerked him into Garvey's lap. It seemed to him

that it was an unusual jerk that would cause him to fall in Garvey's lap. J. C. Garvey testified that Ogden came into the smoker just before the train reached Worthville. The train jerked and slowed up a little possibly a time or two, and threw Ogden into his lap. This occurred between the bridge and the depot somewhere. On cross-examination he stated that the train jerked two or three times, and about that time someone said Jim Gayle had fallen off the train. This was about the time the jerk occurred. J. F. Rogers stated that before the train arrived at Worthville he noticed some very hard jerks. When he first gave his deposition he did not mention any jerks because he was not asked in regard to it. P. J. Fitzgerald, the conductor, who had been in the employ of the company for thirty-three years, testified that he saw the decedent sitting in the coach before the train reached Worthville. As witness came out of the smoker he saw Gayle on the bottom step in a stooping position, holding the railing with his left hand and a grip in his right. Just as soon as witness got to the platform he noticed Gayle, and before he realized what Gayle was going to do, he jumped off the train. At the time the train was approaching the neighborhood of a street crossing. The accident happened just after the section house was passed. At the time there was no shaking or jerking from the train. The steam had been shut off, and it was just rolling in. The accident occurred about 6:50 p. m. When he saw Gayle he jumped so quickly that there was nothing he could do to save him. The engineer and brakeman testified that just after crossing the bridge they shut down the brakes. After that they never turned on the steam, and there was nothing to cause the jerk. The train stopped at the water plug. If the steam had not been shut off when it was the train could not have been stopped at that point.

The company was not negligent in announcing the station before the train stopped; Lunsford v. L. & N. R. R. Co., 153 Ky., 286; or in thereafter opening the vestibule doors for the purpose of enabling passengers to alight from the train. The announcement of the station and the opening of the doors did not constitute an invitation to alight until after the train stopped. Glasscock v. C., N. O. & T. P. Ry. Co., 140 Ky., 720; I. C. R. R. Co. v. Dallas' Admx., 150 Ky., 442. The only

ground, therefore, on which negligence could be predicated is that the decedent was thrown from the train by a jerk that was unusual and unnecessary, and so violent as to show a failure on the part of those operating the train to exercise the highest degree of care for the safety of passengers thereon. Though it may be doubted if the jerk testified to by the witnesses was anything more than a jerk usually incident to the stopping of the train when handled in a careful and prudent manner, we shall assume for the purposes of this case that the evidence as to the character of the jerk was sufficient to take the case to the jury. This is not all, however, that plaintiff was required to establish. It was necessary not only to show negligence, but negligence that was the proximate cause of decedent's death. It was, therefore, necessary for plaintiff to prove that the jerk or jerks testified to by the witnesses caused the decedent to fall or be thrown from the train. None of the witnesses was able to say that decedent fell or was thrown from the train at the time the jerks occurred. They testified that the jerks occurred just before the train reached Worthville. Exactly at what point is left in doubt. These jerks occurred some time after crossing the bridge, and before the train stopped. For aught that appears in the testimony, it may have been due to the fact that the steam was shut off just after crossing the bridge. As this was more than half a mile from the station, it is certain that these jerks did not cause decedent to fall from the train. On the other hand, if the jerks took place just as the train was being stopped at the station, it is equally true that they did not cause the injury. It will be seen, therefore, that the cause of the injury, so far as affected by the evidence of plaintiff, is a matter of speculation or conjecture. There was a failure to establish any causal connection between the injury and the jerk. All that the jury could do was to guess at the cause of the accident. Even if we eliminate from our consideration the evidence of the conductor, it is just as probable under the evidence that the decedent jumped from the train before it reached the station as it is that he was thrown from the train by reason of a jerk. Where there is a failure to show that the negligence relied on was the proximate cause of the injury, defendant's liability cannot be made a matter of mere guess work. In such a case there is nothing to sub-

mit to the jury. It follows that the peremptory instruction was properly given. Watson's Admr. v. L. & N. R. R. Co., 114 S. W., 292; C., N. O. & T. P. Ry. Co. v. Zachary's Admr., 106 S. W., 842, 32 Ky. L R,. 678

Judgment affirmed.