## Louisville & Nashville Railroad Company v. Derrickson.

(Decided May 23, 1916.)

### Appeal from Powell Circuit Court.

1. Carriers—Personal Injuries—Negligence.—If a train is moving slowly and it can not be said by reasonably prudent men to be necessarily dangerous, if a passenger under such circumstances, to avoid the inconvenience of being carried beyond his destination, undertakes to alight from the train, his acts in so doing is not negligence per se, but if the train is moving at such a speed as to make it probably unsafe for him to alight, he will be guilty of negligence per se if he undertakes to do so, and in such case the carrier will not be liable for any injury which he might sustain.

2. Carriers—Personal Injuries—Negligence of Passenger.—Where the facts show that the train had reduced its speed to about four or five miles per hour at a point about 200 yards from the depot platform, but began to increase the speed so that when it arrived at the platform it was moving at the rate of about 15 miles per hour, it was negligence per se for a passenger to undertake to alight from the train while passing the depot platform.

JOHN D. ATKINSON & SON, SAMUEL M. WILSON, BENJAMIN D. WARFIELD and CHARLES H. MOORMAN for appellant.

JOHN M. STEVENSON and A. H. NORTON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee, G. M. Derrickson, obtained in the Powell circuit court, a judgment against the appellant for the sum of $1,000.00, for personal injuries claimed to have been sustained by him through the negligence of the defendant on August 16, 1914, while he was a passenger on the defendant's train. Complaining of that judgment this appeal is prosecuted, with numerous errors urged for a reversal of the judgment. Among them is, that the court refused, upon motion of the defendant, to instruct the jury to find for it, made at the close of plaintiff's testimony, and renewed at the close of all the testimony.

The undisputed facts are these: The day was Sunday, and for many years the defendant had, at about this time of year, run an excursion train from the city of Cincinnati, Ohio, to a place on the extreme eastern edge of Powell county, known as Natural Bridge. The plaintiff at the time was deputy sheriff of the county, under his son, who was the sheriff, and for some years previous to the accident, under an employment of the defendant he would, upon the occasion of these excursions, go to Natural Bridge, sometimes upon the excursion train and return thereon, performing police duties upon the grounds as well as upon the train. He lived at Stanton, the county seat of the county and through which the defendant's railroad ran; and he said that theretofore this excursion train on its return trip had been stopping at Stanton to enable plaintiff, and others who might desire to do so, to leave the train. Upon this particular occasion, he did not go to Natural Bridge on the excursion train, but on a regular passenger train going there ahead of the excursion train. Something near five o'clock in the afternoon of that day, the excursion train, which consisted of about 15 passenger coaches, started from Natural Bridge on its return journey and reached Stanton at about 5:40 p. m. The plaintiff had, by virtue of his employment, free transportation on the road. When the car upon which the plaintiff was riding, and which he says was between the middle and rear end of the train, was within something like 200 yards of the depot, the speed of the train was slowed down to a rate of between four and five miles per hour. The plaintiff's son was in the same coach with him, as well as a Mr. Dehart, and when this slowing down occurred,

the three took their positions upon the steps of the coaches with the view of getting off the train when it reached the depot, about 200 yards ahead. The son of plaintiff, and Dehart, were upon the front steps of one coach and plaintiff upon the rear steps of the next coach. All of the witnesses, including plaintiff, say that after the slowing down to a speed of about four or five miles per hour, the movement of the train, instead of getting slower, increased, and the son says when it arrived at the depot, it was going at a speed of about fifteen miles per hour. Upon this point, the plaintiff says:

"Q. You stepped off the train while it was moving? A. Yes, sir, the train had commenced to slow up down about the tile factory, probably 200 yards from the station and was moving along like it was not going to stop and I got off. It was still moving and the coach I was on was passing the depot. Q. You thought it was going slow enough for you to get off? A. I knew it was moving along at a pretty good rate, but I thought I could make it all right. Q. Was it moving fast or slow? A. It was moving along pretty peart, pretty tolerably fast, it was running faster than it usually ran. Q. Was it running as fast as 15 or 20 miles per hour. A. It was running pretty fast, I do not know that I am enough judge of speed to state it in so many miles per hour."

Plaintiff's son stated that the train, "about 200 yards before getting to the depot, slowed down to about four or five miles per hour * * * but before we got off, it was again gaining speed, and when my father got off it was running about 15 miles per hour * * *. It was too fast for him to get off safely."

This testimony, as stated, is disputed by no one, but on the contrary is more or less corroborated by all of the witnesses who testified in the case. The question, then, is: Should the motion for a peremptory instruction have been sustained?

The rule in many jurisdictions, including this, is, that it is not negligence *per se* for a passenger to undertake to alight from a slowly moving train at a time and place where it is the duty of the carrier to permit him to alight and where he has a right under his contract of carriage to alight. If, in such cases, the carrier, after stopping the train, should start it before the passenger had a reasonable opportunity to alight, and he should undertake to do so while the train was yet mov-

ing slowly, in order to avoid the inconvenience of being carried beyond his station, the question as to whether or not he was guilty of negligence would be one of mixed law and fact and should be submitted to the jury. The same is true if the train fails to come to a complete stop, though moving at such a slow rate of speed as that a reasonably prudent man, having due regard for his own safety, might reasonably conclude that it would be safe to alight.

The rule is well stated by this court in the case of L. & N. R. Co. v. Eakin's Admr., 103 Ky. 465, when it quotes with approval from volume 2 of Wood on Railroads, page 1299, as follows:

"As a rule it may be said that where a passenger, by the wrongful act of the company, is compelled to choose between leaving the cars while they are moving slowly, or submitting to the inconvenience of being carried by the station where they desire to stop, the company is liable for the consequences of the choice, provided it is not exercised negligently or unreasonably."

It cannot be said, as a matter of law, independently of the statute, that it would be under all circumstances an act of negligence for a passenger to attempt to alight from a moving train. But the question is ordinarily one of fact, to be determined by the jury from all the circumstances of the transaction. It is true a case might arise in which it would be the duty of the court to determine the question as matter of law. This would be true if there were no disputed facts, and but one conclusion could fairly be drawn from the facts established. But if these facts are in dispute, or if different conclusions might fairly be reached by different minds from the facts established, the question is for the jury."

To the same effect are the following cases from this court: C. & O. Ry. Co. v. Robinson, 149 Ky. 258; Dallas v. I. C. Ry. Co., 144 Ky. 737, 150 Ky. 442; Ford v. Paducah Railway Co., 29 Ky. Law Rep. 752; I. C. Ry. Co. v. Whitaker, 22 Ky. Law Rep. 395; L. & N. R. R. Co. v. Grimes, 150 Ky. 219; Hayden v. G. M. & G. R. Co., 160 Ky. 692; Hughlett v. L. & N. R. R. Co., 15 Ky. Law Rep. 178.

But if the uncontradicted testimony shows that the speed of the train at the time the passenger attempted to alight, was such as to render it probable to a reasonably prudent person that it would be unsafe to undertake to

get off the train, his action in so undertaking constitutes negligence *per se* and bars a right of recovery. Hayden v. G. M. & G. R. Co., *supra;* Glasscock v. C., N. O. & T. P. Ry. Co., 140 Ky. 720; L. & N. R. R. Co. v. Moore, 150 Ky. 692; Hughlett v. L. & N. R. R. Co., 15 Ky. Law Rep. 178; Adams v. L. & N. R. R. Co., 82 Ky. 603; Dailey v. South Covington, Etc. Ry. Co., *supra.*

In the Moore case, on this subject, it is said:

"Ordinarily, a passenger who is injured by stepping from a train while it is moving at a rate of speed that makes it probably unsafe for him to do so, would be held guilty of such negligence as would prevent a recovery."

In the Glasscock case, *supra,* after reciting the facts (which did not show the train to have been moving as fast as the one here), this court said:

"In view of these facts the conclusion is inevitable that his injuries resulted from his own negligence, and this being true, the trial court should, at the conclusion of the evidence, have peremptorily instructed the jury to find for appellees."

In the Hayden case, *supra,* this court said, upon the question now being considered:

"But if the train is moving at a rate of speed that makes it probably unsafe, to alight, it is negligence *per se.*"

Text-writers could be cited uniformily holding the same rule, but we do not deem it necessary in view of the opinions of this court. The rule just considered proceeds upon the idea that the passenger has no right by his daring and reckless acts to place his life or limb in peril without being visited with entire responsibility therefor. If in such cases, the law would allow him to recover compensation for the injuries which might result from his reckless conduct, it would place a premium on negligence and offer an incentive for him to disregard the injunction of "safety first," which, in these days of rapid, and more or less dangerous transportation, is essential to the preservation of both life and limb.

It is the duty of the court under the authority of the cases herein referred to, and many others from this court, when the undisputed testimony shows a clear case of contributory negligence, to determine as a matter of law, that the facts constitute negligence, and to instruct the jury accordingly.

In none of the cases to which we have referred was the train moving at so great a rate of speed as it was in the case being considered. In fact, the highest speed of any of them, as will be found upon inspection, was eight miles per hour.

In view, then, of the undisputed facts in this case, and the equally undisputed rules of law, there was left no alternative for the court except to have sustained the motion for a peremptory instruction.

For the error in refusing to do so, the judgment is reversed, with directions to proceed in accordance with this opinion.