## Louisville & Nashville Railroad Company v. Spears' Admr.

(Decided June 17, 1921.)

### Appeal from Rockcastle Circuit Court.

1. Death—Damages—Negligence of Carrier—Venue.—Kentucky Statutes, section 6, provides that an action for damages on account of death resulting from injuries inflicted by negligence shall be prosecuted by the personal representative of deceased. Civil Code, section 73, provides that an action against a common carrier for injuries may be brought in the county in which plaintiff resides, if he resides in a county through which the carrier passes. Under General Order No. 18a, issued by the Director General, it is provided that suits against carriers under Federal control may be brought in the county or district where plaintiff resided at the time of the accrual or cause of action. Held, that where a person dies as the result of injuries received through the negligence of a carrier the residence of the personal representative is the one referred to, he being the plaintiff, as that term is used in the foregoing provisions.

2. Carriers—Negligence—Pleadings.—Where it is alleged that decedent was thrown from a train after it reached the station platform, but the evidence showed that the accident occurred at a point distant from the platform, the variance is not material or fatal, the negligence complained of being the alleged unnecessary or unusual jerk of the train, nor does it appear that the carrier, in the maintenance of its defense upon the merits, could have been misled by the allegations.

3. Trial—Errors That Should be Disregarded.—Under Civil Code, section 134, the court must at every stage of the action disregard any error or defect which does not substantially affect the rights of the adverse party.

4. Railroads—Announcement of Stations.—The announcement of stations and the opening of vestibule doors on railroad trains do not constitute an invitation to alight until after the train stops.

5. Railroads—Going on Platform of Moving Train—Contributory Negligence.—Generally speaking it is not such contributory negligence as will defeat a recovery to go on to the platform of a moving train; however, the circumstances may be such as that the negligence of the passenger may defeat a recovery.

6. Carriers—Alighting From Train.—When a train approaches the station a passenger may prepare to leave and whether he is negligent or wanting in reasonable care in leaving his seat, standing in the aisle or going onto the car platform is for the jury to say, if while so standing he is injured by some jerk of the train not usual or incident to its control or management.

7. Carriers—Injury to Passenger.—A passenger riding in a place more dangerous than that intended for passengers and who is hurt by the usual and proper operation of the train, when he would not have been hurt had he remained in his seat, cannot be said to have been injured by the negligence of the carrier.

8. Trial—Question for Jury.—Where there is any doubt as to the facts or there is a reasonable difference of opinion as to the inferences and conclusions to be drawn from the facts, the question becomes one for the determination of the jury.

BENJAMIN D. WARFIELD, J. W. BROWN and C. C. WILLIAMS for appellant.

L. L. WALKER and L. W BETHURUM for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

On August 10, 1917, Garrett Spears boarded a train at Rowland destined for Crab Orchard, Ky. As the train approached the latter place the flagman announced the station and Spears, who was in the smoker, went to the platform of that car and when the train reached a point about four hundred and fifty feet west of the station Spears either stepped or was thrown from the car and instantly killed. In this suit, instituted by his administrator, a recovery was had, to reverse which this appeal has been prosecuted.

Lincoln county was (a) the scene of the accident, (b) the residence of the decedent and (c) the place where the administrator was appointed, although the action was filed in the Rockcastle circuit court. The company filed a special plea to the jurisdiction of the court, relying chiefly upon General Orders Nos. 18 and 18a, issued by the director general of railroads, on April 9 and 18, 1918, respectively, and in the last of which said orders it is provided that all suits against carriers, while under Federal control must be brought in the county or district where the plaintiff resided at the time of the accrual of the

cause of action, or in the county or district where the cause of action arose.

An act of Congress, approved August 29, 1916 (U. S. Comp. Stats. 1918, sec. 1974a), authorized the President in time of war to assume control of the transportation systems of the country, pursuant to which authorization the President, on December 28, 1917, took charge of the railroads of the United States, placing same under the control of the director general.

The petition in this case was not filed until July, 1918, but inasmuch as the accident had happened and the cause of action accrued prior to Federal control this action was properly instituted against the railroad company and not the director general. In taking control of the railroads the government did not assume any liability or obligation arising from operation prior to December, 1917; hence the liability, if any, was that of defendant, and the administrator was authorized to look to defendant for any damages growing out of the death of his intestate.

Under Civil Code, sec. 73, an action against a common carrier for injuries must be brought (a) in the county in which the defendant resides; or (b) in which the plaintiff or his property is injured; or (c) in which he (plaintiff) resides if he resides in a county through which the carrier passes.

It is insisted that the reference to the plaintiff in the Code provision, *supra*, is to decedent, and I. C. R. R. Co. v. Willis' Admr., 123 Ky. 636, 97 S. W. 21, is cited in support of this contention.

Ky. Stats., section 6, authorizes the institution of an action for damages on account of the death of a person resulting from injuries inflicted by negligence and provides that such action shall be prosecuted by the personal representative of deceased, from which it follows that plaintiff could be none other than the personal representative.

The purpose of the director general in fixing the venue of actions was to prevent the institution of suits in jurisdictions far removed from the place where defendant was located, or where the cause of action arose. Otherwise trainmen would oftentimes be required to leave their trains and attend court as witnesses hundreds of miles from their work, thus necessitating their absence from their trains for days, a practice which was not only highly prejudicial to the government's interests but one

that seriously interfered with the physical operation of the roads.

No doubt the framers of the Code provision, *supra,* had a like purpose in mind, to-wit, one that looked to the convenience of all parties; for instance, suit could be maintained in the county of the defendant's residence, or the county in which the injury was inflicted, or in the county of plaintiff's residence, provided the carrier passed through such county. The design of the last clause was to fix the situs of the action convenient to the plaintiff, and yet not inconvenient to the defendant. The fact that plaintiff resides in the county where suit is brought would make it convenient for him and the fact that defendant's road passed through the county would insure that it would not be unreasonably inconvenienced thereby. It seems clear therefore, that where the person injured is dead the home of the personal representative is the one referred to, because he is the one who must look after and prosecute the suit. It would not do to say that deceased was the plaintiff, because his convenience can no longer be consulted, nor could he have any connection with or take any part in the trial of the action. It follows therefore that plaintiff as used in the Code provisions, *supra,* means the administrator in whose name the action must be instituted, and who is authorized to bring the action in the county of his residence, if the carrier passes into or through said county. In so far as I. C. R. R. Co. v. Willis' Admr., *supra,* holds to the contrary, it is overruled. See L. & N. R. R. Co. v. Gilliam's Admr., 24 Rep. 1536, 71 S. W. 863; Turner's Admr. v. L. & N. R. R. Co., 110 Ky. 879, 62 S. W. 1025; I. C. R. R. Co., etc., v. Stith's Admr., 120 Ky. 237, 85 S. W. 1183, 1 L. R. A. (N. S.) 1014; L. & N. R. R. Co. v. Hoskins' Admr., 32 Rep. 1263, 108 S. W. 305; 27 R. C. L. 803.

It matters not whether the suit is governed by Civil Code, section 73, or the orders of the director general, the effect is the same. The personal representative being the plaintiff, he may, if he so desire, bring the action in the county of his residence, if the carrier passes into or through said county.

It is next urged the case pleaded was not the one proved, and for this reason a motion for a directed verdict should have been sustained.

It is alleged in the petition that upon the arrival of the train at Crab Orchard an employe of the company called said station, the train stopped, the flagman walked

out on the station platform and again called out said station and directed the passengers whose destination was Crab Orchard to alight from the train, and it was upon this invitation that deceased walked on to the platform of the car to get off at Crab Orchard, but just as he reached the car platform there was a sudden, unnecessary and violent jerk of the train which threw him with great force from the platform of the car to the station platform, causing his instant death.

The evidence shows the accident did not happen at the station, but at least 450 feet before the train reached Crab Orchard. The *allegata* and *probata* must agree and when there is a material variance between them a peremptory instruction must go.

In Civil Code, section 129, it is provided that no variance between the pleadings and proof is material which does not mislead a party to his prejudice in maintaining his defense upon the merits, and that one claiming to have been so misled must show that fact to the satisfaction of the court and thereupon the court may order the pleading to be amended upon such terms as may be just. In the next section it is provided that if such variance be not material the court may direct the fact to be found according to the evidence and may order an immediate amendment.

The negligence complained of was the alleged unnecessary or unusual jerk or jar of the train, and we cannot see that defendant could have been prejudiced in any wise by a showing that instead of the accident happening at the station, it occurred some distance therefrom. It is not shown that had the petition alleged the accident occurred at a point distant from the station defendant's testimony would have been different. There was a variance between the allegations and proof, but it was not material and defendant could not have been misled by it in the maintenance of its defense upon the merits. Furthermore as provided in Civil Code, section 134, the court must, at every stage of the action, disregard any error or defect which does not affect substantially the rights of the adverse party. This is what was done by the court in the present instance. Lexington & Eastern Ry. Co. v. White, 182 Ky. 267, 206 S. W. 467; I. C. R. R. Co. v. Smith, 133 Ky. 732, 118 S. W. 933.

The instructions are complained of. Those given were approved in L. H. & St. L. Ry. Co. v. Stillwell, 142 Ky. 330, 134 S. W. 202. The facts of that case are not

materially different from those found in the present re-cord and the court did not err in regard to the instructions given. A railroad company is not negligent in an-nouncing a station before the train stops. Lunsford v. L. & N. R. R. Co., 153 Ky. 286, 155 S. W. 398. This is a duty enjoined by statute. (Ky. Stats., section 784). Nor is it negligent in opening the vestibule doors for the purpose of enabling passengers to alight from the train. Gayle's Admr. v. L. & N. R. R. Co., 163 Ky. 359, 173 S. W. 1113.

Likewise it has been held that the announcement of stations and the opening of the vestibule doors do not constitute an invitation to alight until after the train stops, Glascock v. C. N. O. & T. P. Ry. Co., 140 Ky. 720, 131 S. W. 779, and a passenger who, under such circumstances, voluntarily undertakes to leave a train while it is in rapid motion is guilty of negligence. Dallas v. I. C. R. R. Co., 144 Ky. 737, 139 S. W. 958. But, as a legal proposition, it is not such contributory negligence as will defeat a recovery to go on to the platform of a moving train. However, to go on the platform while the train is in motion might properly be held in some cases to be such negligence as will defeat a recovery, while in others it would not. The facts and circumstances of each case must govern. L. & N. R. R. Co. v. Head, 22 Rep. 863, 59 S. W. 23; L. & N. R. R. Co. v. Massie's Admr., 138 Ky. 449, 128 S. W. 330; C. & O. Ry. Co. v. Topping, 23 Rep. 1390, 78 S. W. 135.

The question in cases such as this is not so much whether the passenger was in the exercise of ordinary care while standing on the platform, but whether he exercised such care in leaving the coach and taking a position thereon, e. g., in S. C. & C. S. R. Co. v. Trowbridge, 163 Ky. 79, 171 S. W. 371, the court said that the failure to firmly grip the handrail of a street car was not negligence *per se* where the passenger had given a signal to stop at the next street intersection, as he had a right to expect the car to stop there in obedience to his signal. It may or may not be negligence, depending on the facts of the particular case, to make preparation to leave a railroad car before it comes to a stop or to stand on the platform of a car or railroad train while it is running. Louisville Ry. Co. v. Osborne, 157 Ky. 341, 163 S. W. 189.

As pointed out in I. C. R. R. Co. v. Jolly, 117 Ky. 632, 78 S. W. 476, it is a matter of common knowledge that, as a rapidly rolling passenger train stops at a station, there

is a forward movement of persons even sitting in the car. This movement is much more pronounced when one is standing up, and there is greater danger of an inexperienced person falling than one who from experience is on the lookout for the forward surge of the body just as the train abruptly stops. The railroad company is not responsible for this. No amount of care can avoid it. It is not due to any jolt or jar of the train, but simply to the fact that the body of the person standing up continues to move forward when the feet, resting on the floor of the car, have stopped. It is safer for passengers on railway trains to keep their seats until the train stops. If they leave their seats when the train is approaching the station, they take the risk of those things which are incidental to the stopping of the train in the usual way, and with proper care.

While advisable so to do, a passenger is not required to keep his seat during the whole journey; he may move from one part of the car to another. When the train approaches his station, and it is announced, he may prepare to leave the train and whether he is negligent or wanting in reasonable care in leaving his seat and then standing in the aisle or going on to the car platform, is for the jury to say if, while so standing, he is injured by some jerk or bump of the train not incidental to its proper or usual control or management.

A passenger who rides in a place more dangerous than that intended for passengers and is there hurt by the usual and proper operation of the train when he would not have been hurt had he remained in his seat cannot be said to have been injured by the negligence of the carrier. Because, as said in Louisville Railway Co. v. Osborne, *supra*:

"A sudden jerk may or may not be negligence. It may or may or may not be violent. A car might give a sudden jerk and yet the jerk be a very slight one and such a one as often happens in the usual and prudent operation of a car . . . but the carrier is not liable for an accident that happens on account of a sudden jerk unless it was unnecessary and violent. . . But where a jerk is unusual, unnecessary, and violent, it may be the basis of an action for negligence."

L. & N. R. R. Co. v. Morris, 23 Rep. 448, 62 S. W. 1012, relied upon by defendant, is not in conflict with the conclusion herein reached, because it is expressly stated in the opinion in that case that no one testified the sudden

movement of the train forward was unnecessary, unusual or the result of negligence; nor was any evidence introduced to show such was the case.

It is well settled that wherever there is any doubt as to the facts it is in the province of the jury to determine the question, or where there may be a reasonable difference of opinion in the case, as to inferences and conclusions to be drawn from the facts it is likewise a question for the jury.

In the present case there was evidence justifying the court in submitting the issue of negligence to the jury. A peremptory instruction to find for defendant was not authorized.

Complaint is made that the court erred in the admission and rejection of testimony, but we are satisfied defendant was in no wise prejudiced by the court's ruling in this regard.

For the reasons given the judgment is affirmed.