## HUMPHREY v. FORT KNOX TRANSIT CO.

### No. 679.

District Court, W. D. Kentucky,
at Louisville.

Jan. 6, 1945.

Hugo Taustine, of Louisville, Ky., and R. W. Keenon, of Lexington, Ky., for defendant

MILLER, District Judge.

The plaintiff, Elmo M. Humphrey, sought by this action damages from the defendant, Fort Knox Transit Company, by reason of injuries alleged to have been received while being discharged as a passenger from one of the busses operated by the defendant over the United States Military Reservation in Fort Knox, Kentucky. The plaintiff was a soldier in the United States Army, stationed at Fort Knox, Kentucky. A jury trial resulted in a verdict for the plaintiff in the amount of $1,000. The matter is now before the Court upon the defendant's renewal of its motion for a directed verdict and its motion and grounds for a new trial, in accordance with the provisions of Rule 50(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The defendant's first contention is that jurisdiction claimed by the plaintiff on the grounds of diversity of citizenship, did not exist. The petition as amended states that the plaintiff "is a citizen of the United States and a resident of Cincinnati, Hamilton County, Ohio; that he is in the armed forces of the United States of America and is stationed at Fort Knox, Kentucky." The answer denied these allegations, the defendant contending that the plaintiff was a resident and citizen of Kentucky instead of Ohio.

It will be noticed that the petition does not allege that the plaintiff was a citizen of Ohio, but merely states that he was a resident of Cincinnati, Ohio. Residence and citizenship are not the same. Diversity of citizenship, rather than diversity of residence, is necessary to confer jurisdiction upon the District Court. The allegations of the petition are by themselves accordingly insufficient. Realty Holding Co. v. Donaldson, 268 U.S. 398, 45 S.Ct. 521, 69 L.Ed. 1014. But the failure to properly allege diversity of citizenship between the plaintiff and the defendant will not defeat the jurisdiction of the Court, if, as a matter of fact such diversity exists. The whole record may be looked to for the purpose of curing a defective averment of citizenship, "and if the requisite citizenship is anywhere expressly averred in the record, or facts are therein stated which, in legal intendment, constitute such allega-

R. C. Dougherty and John Dougherty, both of Louisville, Ky., for plaintiff.

tion, that is sufficient." Sun Printing & Publishing Association v. Edwards, 194 U.S. 377, 382, 24 S.Ct. 696, 697, 48 L.Ed. 1027; Kelleam v. Maryland Casualty Co., 10 Cir., 112 F.2d 940, 943. Proof that a party to the suit is a resident of a state is prima facie evidence that he is a citizen thereof. Kelleam v. Maryland Casualty Co., supra; Anderson v. Watts, 138 U.S. 694, 702, 11 S.Ct. 449, 34 L.Ed. 1078; Sun Printing & Publishing Association v. Edwards, 194 U.S. 377, 383, 24 S.Ct. 696, 48 L.Ed. 1027. The evidence showed that at the time of the trial plaintiff had been in the Army for four years; that prior to entering the Army he lived in Cincinnati where he ran a business which he sold upon induction; that he claims Cincinnati, Ohio, as his residence; that on October 14, 1943 he married and shortly thereafter brought his wife to Owensboro, Kentucky, which is approximately 95 miles from Fort Knox, Kentucky, where she had lived for 18 months last past; and that he returned to Cincinnati to vote in the November 1944 election. The action was filed on February 11, 1944. Although the defendant at the trial contested the actual residence and citizenship of the plaintiff, contending that it was Kentucky rather than Ohio, no point was made by it of the defect in the pleadings, and it was assumed by the parties and the Court at the time that no such defect existed in the pleadings. In its brief filed in support of the present motion no point is made on the question of pleading, but the argument is restricted to the question of residence as shown by the evidence. The Court considers the defective averment of the pleadings cured by the facts as shown by a consideration of the entire record. See Realty Holding Co. v. Donaldson, 268 U.S. 398, 400, 45 S.Ct. 521, 69 L.Ed. 1014.

█ The evidence offered was sufficient to establish the fact that the plaintiff was a citizen of the State of Ohio, even though he and his wife had been living for several years in Kentucky. Citizenship depends upon domicile rather than upon residence. "A domicile once acquired is presumed to continue until it is shown to have been changed. Where a change of domicile is alleged the burden of proving it rests upon the person making the allegation. To constitute the new domicile two things are indispensable: First, residence in the new locality; and, second, the intention to remain there. The change cannot be made

except facto et animo. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be the animus to change the prior domicile for another. Until the new one is acquired, the old one remains. These principles are axiomatic in the law upon the subject." Mitchell v. United States, 21 Wall. 350, 353, 22 L.Ed. 584. Residence in a state other than the state of domicile, even for a long period of time, for the purpose of performing official duties which have been assumed by the resident, does not by itself operate as a change of domicile. Certainly, compulsory service by a soldier at an army post in another state, even though he brings his wife to a nearby town to be near him, does not operate as a change of domicile. Wise v. Bolster, W.D.Wash., 31 F.Supp. 856; Ex parte White, D.C.N.H., 228 F. 88; Sweeney v. District of Columbia, 72 App. D.C. 30, 113 F.2d 25, 129 A.L.R. 1370; Pioneer Southwestern Stages v. Wicker, 9 Cir., 50 F.2d 581. The Court finds that the plaintiff was in fact a citizen of the State of Ohio; that diversity of citizenship between the plaintiff and defendant existed; and that the Court had jurisdiction to hear and determine the issue.

██ The defendant's motion for a directed verdict and its complaint of the Court's instructions present the same question of law and can be considered together. The evidence was uncontradicted that the plaintiff, after having attended a theater on the military reservation on the evening of August 25, 1943, boarded one of the defendant's busses at about 11:20 p.m. to return to his barracks about two miles away. As the bus neared his stop he indicated to the driver his desire to get off and moved to the exit door which was controlled by mechanism operated by the driver. While the bus was still moving slowly before it stopped the driver opened the door and the plaintiff stepped out and was thrown to the ground with the resulting injuries. The evidence was conflicting as to other details. The plaintiff testified that the driver in addition to opening the door said to him "O.K.", and that when he stepped off the bus he did not know, by reason of the darkness outside and the failure to have sufficient lights within the bus, that the bus was still moving. The driver denied saying O.K. to the plaintiff but claimed that he said instead "Watch

your step," and that the bus had a dome light which showed the ground outside the door. Other witnesses testified that they could tell the bus was still moving at the time when the plaintiff stepped off, and that it was another passenger who said O.K. to the plaintiff in answer to the plaintiff's statement that he would see him the next day. Other witnesses corroborated the plaintiff with respect to the insufficiency of the interior lighting. The defendant contends that this evidence failed to show any negligence on its part but on the contrary did show failure on the part of the plaintiff to exercise reasonable care for his own safety in stepping off of a moving bus into the darkness, and that its motion for a directed verdict should have been sustained. The Court recognizes that several decisions of the Kentucky Court of Appeals have held that a railroad company is not negligent in announcing a station and in opening the vestibule doors of the car for the purpose of enabling passengers to alight from the train before the train stops, and such actions on the part of the carrier does not constitute an invitation to the passenger to alight from the train until after it stops. Glascock v. Cincinnati N. O. & T. P. Ry. Co., 140 Ky. 720, 131 S.W. 779; Gayle's Adm'r. v. Louisville & N. R. Co., 163 Ky. 459, 173 S.W. 1113; Louisville & N. R. Co. v. Spears' Adm'r, 192 Ky. 64, 232 S.W. 60.

These cases all involved railroads. Conditions of railroad transportation, including several cars with numerous exits and with insufficient trainmen to post one at each exit, probably justify such a rule in that character of transportation. On the other hand, where there is only one exit and there is one employee who can control the operation of that particular door, as is the case in most motor bus transportation, the same rule does not necessarily exist, and opening the door before the bus comes to a complete stop, particularly at night where insufficient lighting may prevent a passenger from noticing that the bus is still moving, might be failure on the part of the carrier to exercise due care for the safety of the passenger in alighting. Counsel have not referred to any such cases involving motor bus transportation. But irrespective of whether such different conditions justify a different rule, there was in the present case the additional evidence that the driver in opening the door also said O.K. to the passenger. Whether or not the driver made such a remark to the passenger was a disputed fact, and the Court felt that if such fact was found to exist it was of sufficient importance to leave to the jury whether or not the operator was guilty of negligence in discharging the passenger. Accordingly, the Court instructed the jury on this point as follows: "The act of the driver of the bus in opening the door of the bus for the purpose of enabling a passenger to alight from the bus before it actually came to a stop was not by itself negligence on the part of the driver, and even though you may believe from the evidence that the driver of the bus did open the door of the bus before it actually came to a stop, you can not find for the plaintiff unless you also believe from the evidence that the driver of the bus at said time and place in question did some other act on his part which either by itself or in conjunction with his opening of the door invited or told the plaintiff to alight from the bus, and that acting under said invitation the plaintiff did alight therefrom and was injured by reason thereof."

Another instruction defined the duty of the defendant, limited liability to negligence on its part which caused the injury and defined negligence and ordinary care. It is believed that these instructions were probably more favorable to the defendant than it was entitled to.

Turning to the defendant's contention that the plaintiff was contributorily negligent, in stepping from a moving vehicle, the Court gave the usual instruction as to the duty resting upon the passenger to exercise such care for his own safety as a person of ordinary prudence situated as he was would usually exercise under like circumstances, and the effect of his failure to exercise such care. Defendant's contention that plaintiff's act in stepping from a moving bus was negligence as a matter of law is not supported by the authorities. The rule seems settled in Kentucky that it is not negligence per se for a passenger to step from a moving carrier, for in many cases when a carrier is moving very slowly it may reasonably appear safe to a prudent person to step from it, and except in flagrant cases it is a question for the jury to determine whether or not the passenger exercised ordinary care in alighting from the moving vehicle as he did. Chesapeake & Ohio R. Co. v. Robinson, 149 Ky. 258, 147 S.W. 886; Hayden v. Chicago, Memphis & Gulf R. Co., 160 Ky. 836, 170 S.W. 200, L.R.A.1915C, 181; Louisville &

N. R. Co. v. Derrickson, 170 Ky. 334, 336, 337, 185 S.W. 1114. In the present case the bus was moving slowly at the time, and it was also a disputed question of fact whether or not the plaintiff knew it was moving at the time he attempted to alight. On this point the Court gave the following additional instruction: "On the other hand, it is not by itself negligence as a matter of law for a passenger to step off of a moving vehicle. The speed of the vehicle may be slow enough at that particular moment as to make it appear safe to do so. The real question before you on this point is whether or not, considering all the facts in the case, including the fact that the bus was moving at the time, the plaintiff exercised such care for his own safety as a person of ordinary prudence situated as he was would usually exercise under like circumstances."

The Court believes that the question of contributory negligence on the part of the plaintiff was fairly and correctly left to the jury.

The defendant's motions for a directed verdict and a new trial are overruled.